BRIGGS & STRATTON CORPORATION, Appellant, v. DEPART-
MENT OF INDUSTRY, LABOR & HUMAN RELATIONS
and another, Respondents.

*No. 331.   Argued June 5, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 817.)

402

For the appellant there were briefs by *Brady, Tyrrell, Cotter & Cutler,* attorneys, and *Elwin J. Zarwell* and *Michael J. Spector* of counsel, all of Milwaukee, and oral argument by *Mr. Spector.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondent Gladys E. Richards there was a brief by *Goldberg, Previant & Uelmen,* attorneys, and *Thomas N. Tylicki* of counsel, all of Milwaukee, and oral argument by *Mr. Tylicki.*

HEFFERNAN, J. The Department of Industry, Labor & Human Relations made the following findings of fact:

"That the applicant sustained injury on December 19, 1966, while walking down an aisle at work; that her foot was suddenly stopped; that as she fell she struck her left knee on the floor with sufficient force to extensively fracture the patella to the extent that an orthopedic surgeon determined it could not be effectively repaired and removed it; that the applicant was wearing tennis shoes and upon examination of the shoes after the fall she discovered oil on the sole; that this was not an idiopathic fall involving a slumping to the floor; that the reasonable inference from the resulting fracture is that sudden, extensive trauma was involved; that the applicant sustained injury in the course of and arising out of her employment . . . ."

It is, of course, settled law that the findings of the department will not be reversed if they are supported by credible evidence. In the case of *R. T. Madden, Inc. v. Department of Industry, Labor & Human Relations,* post, p. 528, 169 N. W. 2d 73, we discussed the test of any credible evidence and pointed out that a quantum of evidence sufficient to support the findings was required. We said in *Madden:*

"If there is credible, relevant, and probative evidence and that evidence construed most favorably would justify men of ordinary reason and fairness to make that finding, the evidence is sufficient. A finding should rest upon such evidence and not upon a mere scintilla of evidence or upon conjecture and speculation." (Post, p. 548.)

It is clear from *Madden* that, even though the evidence could have led to a contrary but equally rational inference, the finding for that reason would not be upset.

"The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make." *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182.

We have previously said that a finding can be against the great weight and clear preponderance of the evidence

and, yet, if there is credible and probative evidence of a nature that would justify men of ordinary reason and fairness in making the finding, the finding will be sustained even though, applying the same test to the same facts, a reviewing court would be obliged to sustain an opposite finding were it made.

In *Conley v. Industrial Comm.* (1966), 30 Wis. 2d 71, 85, 140 N. W. 2d 210, we quoted with approval the statement appearing in *Hills Dry Goods Co. v. Industrial Comm.* (1935), 217 Wis. 76, 85, 258 N. W. 336:

" 'If the commission finds against the great weight and clear preponderance of the evidence, or if it finds upon a given state of the evidence one way in one case and another way in another case, there being the requisite minimum evidence in each case, the matter is beyond the jurisdiction of this court.' "

Applying these tests herein, is the finding of the department supported by sufficient credible evidence? The issue in the case was whether or not the fall was "unexplained." The appellant, Briggs & Stratton, so contends, and it is well settled in Wisconsin that a truly unexplained fall is not compensable, for it gives rise to no presumption that the injury arose out of the employment. The case of *Nielsen v. Industrial Comm.* (1961), 14 Wis. 2d 112, 109 N. W. 2d 483, most nearly typifies the unexplained fall. The facts surrounding the fall were stated thus in that opinion:

"The reason or cause of the accident is not to be found in the evidence. The only testimony is that of the applicant who stated she could not tell how she happened to fall while going from the laundry to the hotel. She did not know whether she slipped, and the accident happened so fast she did not know what happened. We do not know whether she was walking on a sidewalk or on the grass, on the level or on a slope. There is no evidence indicating the fall was caused by any hazard or danger of her employment or by any disease or physical disability personal to the applicant which caused or was in

any way related to the accident. This is truly a case of an unexplained fall." *Nielsen, supra,* pages 114, 115.

In *Kraynick v. Industrial Comm.* (1967), 34 Wis. 2d 107, 148 N. W. 2d 668, we affirmed a finding of the commission denying compensation when there was evidence that the applicant, who was standing on a stairway, gasped for breath, fell backward in a rigid position, and made no effort to catch himself, and there was previous evidence of alcoholism, head injuries, and "blackouts." We said there at page 111 that, although Kraynick was undeniably performing services, "the applicant is required to prove that the cause of the fall was not solely idiopathic in nature."

In this case the finding of the department that the fall was not idiopathic is undisputed in the testimony, and the appellant does not dispute the finding made in that respect. It does, however, speculatively point out that the finding does not rule out an idiopathic fall involving sudden and extensive trauma, but we find no basis in this record for such speculation. There was positive evidence that Gladys Richards had no history of previous faintness or collapses. She testified that she was well and fully conscious at the time of the accident and did not feel faint until after the fall, when she realized that her knee was severely fractured. There was also evidence the fall was occasioned by a sudden stopping of her foot. Her doctor indicated no predisposition to faintness that would account for an idiopathic fall. It seems clear that the finding that the fall was nonidiopathic is supported by sufficient, undisputed credible evidence.

Here, clearly, the employee was performing services when she sustained an injury in a nonidiopathic fall. Does the conjunction of those facts alone entitle the applicant to compensation? We think not. Although the language of some of our cases would tend to support that view (*Cmelak v. Industrial Comm.* (1965), 27 Wis. 2d

552, 135 N. W. 2d 304, and *Kraynick, supra*), we believe that the fall must be additionally explained by evidence of a cause related to the employment.

There was evidence of such cause related to the employment. It was the testimony of Gladys Richards that, as she walked down the aisle between the machines, her foot was "stopped." Her language was unequivocal that her foot was struck by some object or her foot struck some object. Although she was unable to identify the object, she was certain in describing her fall. After being subjected to cross-examination, she stated her foot "slipped." In order to clarify this apparent discrepancy, her own attorney asked her, "What do you mean slipped? How do you understand that term?" She answered, "I understand that it was the foot that threw me, that stopped; and that's what caused me to fall."

In addition, the physical conditions of the site of the fall could well have led to the inference that pieces of aluminum embedded in the tarred surface or caught in the interstices of the wood-blocked flooring caused the foot to stop. The evidence was undisputed that, at the place of the fall, chips of aluminum, some as large as a fingernail, were thrown on the tarred surface of the aisle by a nearby machine. It was also undisputed that these pieces many times adhered to the tar and were pressed into the surface of the floor. While there was no evidence that any pieces did at the time protrude from the surface, yet these facts of the physical condition of the floor surface were completely uncontroverted.

This case is readily distinguishable from *Nielsen, supra,* a case of a true unexplained fall. In *Nielsen* the applicant did not know what happened—where she fell or how she fell. In the instant case the applicant knew how she fell. She knew where she fell, and she knew what caused her fall, although she was not able to identify the precise object that "stopped" her foot.

It was at this juncture that we believe the trial examiner went astray in his decision. The examiner considered the fall was unexplained because Gladys Richards was unable to identify the object that stopped her foot. We do not consider that a relevant fact. Nor do we consider it to be of the slightest relevancy whether her foot stopped or her foot slipped. If it did one or the other, the fall is not "unexplained." Of course, an internal conflict in testimony, if unexplained, could affect the credibility of the witness, and a lack of certainty would tend to render the testimony less believable. Here, however, the inconsistency as to whether she slipped or fell was explained by re-direct examination, and, in any event, the department chose to believe her testimony that her foot either was stopped or she slipped as the result of being struck by an unknown object.

The examiner did not disbelieve Gladys Richards. He merely placed undue emphasis on the fact that she could not identify the object that caused the fall, and then proceeded to equate that testimony with a conclusion that she did not know what caused her fall and, hence, the fall was, to the examiner, "unexplained."

The applicant's version of the happening is also borne out by the violence of the fall. She was proceeding down the aisle at a slow rate of speed when, abruptly, her foot was stopped. Both feet left the ground, she came down on the floor, facing at an angle of almost 180 degrees from that in which she was proceeding, and with such force as to cause a seriously comminuted fracture.

We have no difficulty in determining that the evidence was sufficient to sustain the applicant's burden of proof and to support the department's findings. There was sufficient evidence not only that the fall was not idiopathic, but in addition there was evidence of a separate and work-related cause—the "stopping" of her foot by an unidentified object.

Appellant points out, however, that this court under a similar fact situation recently reversed a circuit court judgment that granted compensation to the claimant.

The facts were not wholly alike, however. In *Brickson v. ILHR Department* (1968), 40 Wis. 2d 694, 162 N. W. 2d 600, the applicant had given inconsistent statements to the effect that she did not know what caused her to fall. These contradicted her statements given at the hearing that her foot stopped and caused the fall. The department in *Brickson* chose not to believe the applicant as the result of her out-of-court statements that she did not know what caused the fall. As we stated therein at page 700:

"On the basis of her statement that she did not know what caused her to fall, there is evidence to sustain the conclusion that the fall was unexplained."

In *Brickson,* the court found that there was credible evidence which supported the department's findings that the fall was not solely idiopathic, and, moreover, there was no evidence of an employment-related cause.

In the instant case, the applicant's uncertainty went only to the particular object that had caused her foot to stop or slip—which it did is irrelevant if there was evidence that it did either.

Thus, the cases can be distinguished upon their facts. That distinction, however, is legally inconsequential. The truly important distinction is that, on almost identical facts, the department in *Brickson* found that the fall was unexplained, while in this case the department found the fall was nonidiopathic and caused by a work-related event.

This court has repeatedly stated the truism that we look to the evidence to support the finding that was made and not a finding not made, although the evidence would have supported such contrary finding. It is thus apparent that, on identical or near-identical testimony,

which a fact-finder on a selective basis can choose to believe or not to believe, different findings may result. Moreover, reasonable but different inferences may arise from undisputed facts. In *Brickson* we recognize that there was credible evidence that might well have supported a finding of compensability had the department made such finding, but it did not. In *Brickson* we recognized that state of the record when we said, "We thus need not consider whether there was credible evidence that would have supported a contrary inference or conclusion." (P. 699.)

Thus, even had the facts in this case been identical to *Brickson,* a reviewing court exercising its function as prescribed by the legislature would be obliged to support a finding of compensability in one case and a finding of noncompensability in the other if, in each case, there was sufficient credible evidence to support the finding made, though in one case or the other the finding might be against the great weight and clear preponderance of the evidence.

It is not within the statutory prerogatives of this court to second-guess the department's proper exercise of its fact-finding function even though, if viewing the case *ab initio,* we would be likely to come to another result.

We believe that after forty years of judicial history appellants should abandon their fond hopes of reversing the department's findings on the "what might have been" theory. No doubt, the findings in this case or in *Brickson* "might have been" different, and no doubt, as we see these facts, we would in each case have upheld such different findings of the department. We see no purpose in litigating questions of disputed fact in this court when such questions are not resolvable here.

On this review the appellant for the first time raises the question of whether there was proper compliance with *Braun v. Industrial Comm.* (1967), 36 Wis. 2d 48, 153 N. W. 2d 81. Therein we said:

"In situations where an examiner hears conflicting testimony and makes findings based upon the credibility of witnesses, and the commission thereafter reverses its examiner and makes contrary findings, the record should affirmatively show that the commission had the benefit of the examiner's personal impressions of the material witnesses. This may take the form of either adequate notes of the examiner or personal consultation with him. The demands of due process cannot be satisfied with anything less." (P. 57.)

In this case, the only notation of record is the statement in the department's order, "The commission had the benefit of the examiner's personal impressions of the witnesses' testimony."

In the instant case, however, the examiner chose to rule against Gladys Richards not because he doubted her credibility, but because he believed that for her fall to be other than "unexplained" she would have to identify the object that caused her foot to stop or slip. This was an erroneous conclusion of law and not a question of credibility, where special deference is to be paid to the face-to-face examiner or fact-finder. Hence, we do not think the procedure outlined in *Braun* relevant to the issues on this appeal.

We, however, are obliged to comment on the very minimal nature of the department's compliance with *Braun* when it merely inserts in its record this most perfunctory sentence. The department has asked us to take judicial notice [1] of the fact since July of 1967 that the department has asked for a statement of the examiner giving his impressions of the credibility of the witnesses. We have before us an addendum to the record which makes it clear that no impressions of credibility were relayed by that memorandum. The communication

---

[1] While we have taken judicial notice of the present department procedure for the purpose of commenting on the adequacy of that procedure, the facts set forth in the department's documents filed with this court on May 15, 1969, have not been relied upon in resolving the merits of the case.

from examiner Collins to deputy administrator Taugher is denominated "personal impressions of examiner Robert A. Collins." The following are its entire contents:

"In this case the A failed to prove what caused her to fall. During the hearing she was repeatedly asked what caused the fall & she did not know. I felt it was reasonable to assume that this was an unexplained fall since shortly following the accident the A stated she did not know what caused the fall & she again stated this at the time of the hearing."

It is apparent, whatever the purpose of the communication, that these "impressions" have nothing to do with credibility or why Gladys Richards should or should not be believed. A memorandum of this kind does not comply with *Braun,* which should be addressed to the credibility of the key witnesses.

A letter dated November 6, 1968, by Chairman Fagan has also been filed, though it is not a part of the record. Therein, he states that since *Braun* ". . . no examiner has been reversed without his having appeared and given the Commission the benefit of his observations on credibility." This is an admirable procedure, but the fact that such is the procedure is not apparent in the statement appearing in the record as it was transmitted to the circuit court. That such a procedure has been followed should be specifically set forth in the record of each such case hereafter where the department disagrees with the recommendations of its examiner.

We do not find the most minimal compliance with *Braun* to be fatal in this instance, since no substantial question of credibility is presented.

*By the Court.*—Judgment affirmed.