SIMONTON, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 272. Argued January 3, 1974.—Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 302.)

114

For the appellant there was a brief by *Fulton, Menn & Nehs, Ltd.*, attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. Nelson.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Lowell E. Nass*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

For the respondent Employers Insurance of Wausau there was a brief by *H. R. Klueter*, attorney, and *George P. Anderson* of counsel, both of Wausau, and oral argument by *George P. Anderson.*

HEFFERNAN, J. The record shows that Van Handel was the owner of a business located in Kaukauna, Wisconsin. He operated a small packing plant, and he also employed a small number of truck drivers for the purpose of delivering cattle from South Dakota to Milwaukee, Green Bay, and Peshtigo. Frank Simonton was hired as a driver sometime in February, 1965, in Watertown, South Dakota. Thereafter, until the time of his death in 1968, he

worked first as a part-time employee for Van Handel and eventually as a full-time truck driver.

It was undisputed that, during the years 1965, 1966, and 1967, about 90 percent of the cattle shipped by Van Handel went to Milwaukee, and during this period 90 percent of the trips undertaken by Simonton for Van Handel included stops in Milwaukee.

Although Simonton continued as a full-time employee of Van Handel, the number of trips to Milwaukee declined in 1968. Van Handel explained at the hearing before the examiner that the decline resulted when one of two packing plants serviced by Van Handel in Milwaukee burned down. Van Handel testified that, even with this decline in business, in 1968 Simonton spent about 50 percent of his time driving to various places in Wisconsin and that about 75 percent of his mileage logged was in this state. Van Handel stated that in 1968 Simonton continued to drive to Milwaukee and also to Green Bay, Peshtigo, Kaukauna, and Hudson. During this period, there was in effect a workmen's compensation policy issued by Employers Insurance of Wausau. Employers denied coverage under its policy on the ground that the Wisconsin Workmen's Compensation Act was inapplicable at the time of the accident because the deceased was not then performing services growing out of and incidental to his Wisconsin employment. The factual underpinnings for this argument were developed by Employers' attorney at the hearing before the examiner.

Although Van Handel testified, in response to the questions of the claimant's attorney, that in 1968 Simonton spent 50 percent of his time in Wisconsin and traveled 75 percent of his mileage in Wisconsin, in response to the question by Employers' attorney he modified that statement to say that Simonton spent only 40 percent of his driving time in Wisconsin. At that juncture, the insurance company's attorney confronted Van Handel with the

statement given by Van Handel in 1969 to an adjuster for Employers. Van Handel then admitted that he had said in 1969 that 90 percent of Simonton's trips in 1968 were between Watertown, South Dakota, and points in Minnesota. He said that the information in the statement was true "as I gave it then."

Other undisputed information in the record showed that the semi-trucks operated by Van Handel's drivers were licensed in Wisconsin, and the workmen's compensation insurance from Employers was first issued in 1965 and renewed each year. It was agreed that the policy covered only liability that might be incurred under the Wisconsin act. On the basis of the evidence, the examiner concluded that there was coverage under the Wisconsin act and awarded compensation to Marlene Simonton.

The examiner's findings were reversed by the commission, which entered an order denying compensation on the ground that the principal employment was in Minnesota and South Dakota and that the Wisconsin employment was merely incidental thereto. That order was affirmed by the circuit court.

During the course of oral argument in this court, the attorney for the department acknowledged that, under the facts as they existed in 1965, 1966, and 1967, Simonton's employment was covered by the Wisconsin Workmen's Compensation Act. The argument of both the department and Employers is that in 1968, because of the marked diminution of trips to Wisconsin, the principal employment was in South Dakota and Minnesota, that the few trips to Wisconsin were incidental to the employment in those states, and that at the time of the accident the deceased was not performing services growing out of and incidental to his employment in Wisconsin.

We conclude that, under the facts undisputed in the record, the judgment of the circuit court must be re-

versed and the commission must be directed to enter the appropriate award to Marlene Simonton.

We also point out that the commission could not, on the basis of the information before it as reflected in our records, have set aside the examiner's award without violating the applicant's right of due process. The record shows that Van Handel offered discrepant testimony in respect to the work performed by Simonton in Wisconsin in 1968. It is apparent that the commission's findings were based upon the testimony given as a result of the impeachment procedure and the introduction of Van Handel's written statement that contradicted the testimony elicited by the applicant's attorney. As a consequence, there was inconsistent testimony before the commission, and it chose to give credence to one portion of the testimony in preference to the conflicting testimony. We said in *Falke v. Industrial Comm.* (1962), 17 Wis. 2d 289, 295, 116 N. W. 2d 125, that cases involving the credibility of witnesses "present a special problem to the commission which should be recognized by it under its fact-finding process," and that a constitutional right is denied a petitioner when the commission decides a question of credibility without the benefit of the participation of the hearing examiner.

At a later time we stated in *Briggs & Stratton Corp. v. ILHR Department* (1969), 43 Wis. 2d 398, 411, 168 N. W. 2d 817, that any consultation of the commission with the examiner in respect to his impressions or conclusions in regard to the credibility of witnesses "should be specifically set forth in the record." While some notes of the examiner are in the record, they do not reflect any impressions or conclusions of the examiner that are required to satisfy the due process requirements when the commission undertakes to pass upon the credibility of testimony. *Braun v. Industrial Comm.* (1967), 36 Wis. 2d 48, 57, 153 N. W. 2d 81; *Shawley v. Industrial Comm.* (1962), 16

Wis. 2d 535, 542, 114 N. W. 2d 872. In *Transamerica Ins. Co. v. ILHR Department* (1972), 54 Wis. 2d 272, 284, 195 N. W. 2d 656, a case decided subsequent to the commission's action in the instant case, this court held that fundamental fairness required a separate statement of the commission explaining why the commission reached its decision contrary to the examiner's findings of fact. In this case no reason was given why the findings of the examiner were set aside and credence was given only to the prior statement of Van Handel. Under these facts, because of this denial of due process, even had the commission employed the proper legal standard, we would be obliged to reverse the decision of the circuit court and of the commission and remand for further proceedings.

In the instant case, however, we conclude that that is not necessary, for, even under the facts as relied upon by the commission, a compensation award should have been made. The commission erred in its reliance upon the holding of this court in *Perfect Seal Rock Wool Mfg. Co. v. Industrial Comm.* (1950), 257 Wis. 133, 42 N. W. 2d 449.

Under Wisconsin law, liability exists whenever an employee sustains an injury, at a time both the employer and employee are subject to the provisions of the act, and the employee is performing services growing out of and incidental to his employment.

It is not argued that Van Handel was not an employer subject to the act. It is also conceded that Simonton was an employee.

The commission properly identified the only issue in the case as being whether, under sec. 102.03 (1) (c) 1, the employee Simonton at the time of the injury was performing service growing out of and incidental to his employment. In *Val Blatz Brewing Co. v. Industrial Comm.* (1930), 201 Wis. 474, 481, 230 N. W. 622, we stated:

"The one essential requisite to liability under the Wisconsin compensation act is employment under such circumstances as to create the status of employer and employee under the Wisconsin act."

We said that this status arises "when service is performed within the state under a contract of hire, without regard to the question of where the contract was made." In another case we held that, once that status has been attained, the employee is covered by the act even while absent from Wisconsin if the injury occurred while performing services growing out of and incidental to his employment. *McKesson-Fuller-Morrisson Co. v. Industrial Comm.* (1933), 212 Wis. 507, 513, 250 N. W. 396.

The record demonstrates that Frank Simonton attained that status—an employer-employee relationship under the Wisconsin Workmen's Compensation Act—in the years 1965, 1966, and 1967, because during that time Simonton rendered "service for another in the state of Wisconsin under a contract of hire." *Wandersee v. Industrial Comm.* (1929), 198 Wis. 345, 347, 223 N. W. 837. Once this employment status had been established in Wisconsin, we consider it immaterial that the actual time spent working for the Wisconsin employer in Wisconsin had been reduced to 10 percent of the employee's time. During 1968 the employer-employee status continued in Wisconsin, and during this period work was done here. The fact that the accident occurred on a trip that did not involve travel in Wisconsin is wholly irrelevant. The status had been established by substantial services rendered to the Wisconsin employer in Wisconsin.

The commission relied upon the 1950 case of *Perfect Seal Rock Wool Mfg. Co. v. Industrial Comm., supra.* In that case the employee had never performed services in Wisconsin, except for a three-day period for training purposes. He was permanently employed in another

state, and under the condition of that employment there was no expectation that he would return to Wisconsin in the course of his ordinary work routine. In *Perfect Seal* the court attempted to capsulize its reasoning by saying that the award of compensation under the circumstances would be "ridiculous." The court gave as an example, *reductio ad absurdum:*

"An employer, such as General Motors or other nationally operating corporation over which Wisconsin had jurisdiction, could be made to respond in Wisconsin for injuries to a Michigan employee injured in Michigan if he had made a business trip to Wisconsin for his employer, even though it may have been years before the injury." (P. 138)

No such absurd situation is presented in the instant case, and the facts of *Perfect Seal* do not warrant the commission's reliance upon it.

In the instant case the employment status was not transitory but was substantial, covering most of the employee's working time over a period of more than three years. Even during the period when the employment time in Wisconsin was reduced, actual employment continued in Wisconsin. The *Perfect Seal* rationale is appropriate, if at all, only in the absurd situation cited by the court therein. It has no relevance to the instant case.

It may well be that the employer Van Handel and the employee Simonton had also attained an employment status which made them subject to the workmen's compensation laws of other states, but that fact does not operate to deprive the Wisconsin law of jurisdiction or the employee of Wisconsin benefits as long as there exists a bona fide employment relationship in Wisconsin. *See Perfect Seal, supra,* p. 135. The employment status was a subsisting one, and the work being performed at the time of the accident was incidental to the employment status that had been established in Wisconsin and was

subject in every respect to the Wisconsin law. It was not necessary that the trip in question either begin or end in Wisconsin. It was incidental and grew out of the employment which had established a situs here.

This interpretation is fully consonant with the purpose of the workmen's compensation law, which was well explicated in the *Val Blatz Case, supra*. We stated therein:

"The fundamental idea upon which liability is imposed is that an injury to an employee, like damage to a machine, is a burden that should be borne by the product of the industry and ultimately paid by those who consume this product." (P. 478)

In the instant case the product sold was the trucking services of the employer Van Handel. The burden of liability for workmen's compensation payments was assumed by the employer, and payments were made to an insurer to afford protection from that liability. The cost of such insurance coverage was, under proper accounting methods, added to the cost of the services rendered.

Although the situation in *Val Blatz* factually does not fully comport with that in the instant case, the court therein considered the problems facing an employee who loses his right to compensation each time he crosses the state line. The same concern is obviously appropriate under the public-policy principles of the act in respect to any employee who once qualifies under the Wisconsin act and whose work for a Wisconsin employer may periodically result in particular missions that may be performed wholly outside the state. It would be unreasonable for an employee who has acquired a status in Wisconsin to be deprived of that status merely because the accident occurs elsewhere and to subject him to being "brought under any one of many different compensation acts, with whose provisions he cannot hope to be familiar." *Val Blatz, supra,* page 480. Moreover, *Val Blatz* concerned itself with the problem of Wisconsin employers

and the heavy burden to which they may be subject if they are unexpectedly deprived of coverage under the Wisconsin law and are exposed to the liability of the compensation laws of other jurisdictions in which they may be operating.

In the instant case the employee and the employer proceeded in the expectation that there was coverage under the Workmen's Compensation Act for the operations conducted by the Wisconsin employer in Wisconsin, South Dakota, and Minnesota. Insurance for the protection of both parties to the employer-employee status was taken out in that expectation. After the employment relationship in Wisconsin was indubitably established, as was conceded by counsel for the department, a fortuitous event took place—the burning of the plant of one of the Wisconsin customers. This resulted temporarily in a lower percentage of the work of the employee being actually performed in Wisconsin. This unexpected circumstance should not, where the status is established in Wisconsin, leave a Wisconsin employer without coverage and subject to compensation claims in other states for which he had not secured protection. Nor should an employee who has established a substantial relationship in Wisconsin under the Wisconsin compensation act be deprived of the beneficent provisions of that act by the circumstance that his Wisconsin employer was obliged temporarily to divert a portion of his work to another state when, during that period, the employee remained answerable to his employer on a day-to-day basis to perform services in Wisconsin.

In a series of cases dealing primarily with the problems of conflicts of law, we have pointed out, when parties assume a legal relationship one to the other, either in the field of tort or contract, that one of the factors to be considered in the choice of law to be applied is the predictability of results—what was the reasonable expecta-

tion of the parties that the law of one jurisdiction rather than another should be applied. *See Heath v. Zellmer* (1967), 35 Wis. 2d 578, 151 N. W. 2d 664; *Conklin v. Horner* (1968), 38 Wis. 2d 468, 157 N. W. 2d 579; *Zelinger v. State Sand & Gravel Co.* (1968), 38 Wis. 2d 98, 156 N. W. 2d 466; and *Hunker v. Royal Indemnity Co.* (1973), 57 Wis. 2d 588, 204 N. W. 2d 897.

The facts of this case reveal that it was the expectation of the employer and of the employee that insurance under the Wisconsin act would furnish protection to both of them, because the course of conduct of the parties had established a status subjecting them to the jurisdiction of the Wisconsin law.

This status has never changed, and the jurisdiction of the Wisconsin compensation act is fully applicable where a Wisconsin employer and an employee have established an employment status in Wisconsin, even though the contract of employment was made elsewhere, the injury occurred elsewhere, and the injured workman was a resident of another state. All that is necessary is that the work being performed at the time of the accident grew out of and was incidental to the Wisconsin employment relationship. It is immaterial that at or about the time of the accident a major portion of the work was done in Minnesota or South Dakota. The test is not the quantity of work performed in Wisconsin as compared to that done in another state, but is rather whether the work performed was incidental to a Wisconsin employer-employee relationship. Once that has been established under such circumstances that its bona fides cannot be questioned, where the work is performed at the time is immaterial. Even assuming the facts upon which the commission relied, that the major proportion of the time spent in the employment during 1968 was outside of the state of Wisconsin—a finding that could be reached only by ignoring the due process requirements for determining credibility—the fundamental and controlling point of law

remains that, where the employment status is established in Wisconsin, under the Wisconsin compensation act the benefits and liabilities are applicable to that employer-employee relationship until it is interrupted by the cessation of work for the Wisconsin employer.

*By the Court.*—Judgment reversed, and cause remanded with directions to set aside the order of the commission and for further remand to the commission for the entry of an award consistent with this opinion.