CITY OF APPLETON, Appellant, V. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent.

*No. 252. Argued November 27, 1974.—Decided March 6, 1975.*
(Also reported in 226 N. W. 2d 497.)

HEFFERNAN, J., WILKIE, C. J., and DAY, J., dissent.

".  .  ."

For the appellant there was a brief and oral argument by *David G. Geenen,* city attorney.

A joint brief was filed for the respondent Department of Industry, Labor & Human Relations by *Robert W. Warren,* attorney general, and *Gordon Samuelsen,* assistant attorney general; and for respondent Irene Schroeder by *Bruce F. Ehlke* and *Lawton & Cates,* all of Madison; and the cause was argued by *Mr. Samuelsen* and *Mr. Ehlke.*

CONNOR T. HANSEN, J. The deceased, William E. Schroeder, worked as a fireman for the city commencing April, 1949, and continuing until shortly before his death on May 13, 1969. Between 1949 and 1954, he worked as a nozzle man or middleman, but in the latter year he was promoted to driver on the rescue squad. Following a year-and-a-half with the rescue squad, he was promoted to lieutenant and again assigned to the rescue squad, a job which he had on and off for the rest of his career.

While the evidence was unclear as to how much the deceased actually engaged in fighting fires, it appears that his duties did not normally require that he do so.

The fire department records indicated that the deceased had never been treated for smoke inhalation. In addition, none of the witnesses, including the applicant herself, could testify that they knew he had been so treated.

The death certificate and the autopsy protocol listed "Bronchopneumonia (days), associated with bronchogenic carcinoma, left lower lobe, with widespread metastasis (months)," the latter of which is a form of lung cancer, as the cause of death. The autopsy protocol also noted that the deceased had an adenomatous polyp of the colon with carcinomatous changes, or cancer of the colon.

Dr. John G. Russo, an experienced diagnostic radiologist and a certified specialist in the field, called by the city, stated to a reasonable certainty that the cause of death was generalized cancer. He opined that either the lung cancer or the colon cancer could have caused death, but that it was more likely that the cancerous polyp had metastasized to the liver and bones than the lung cancer. It was noted that the deceased's medical history indicated that he had had an operation ten years prior to his death for removal of a polyp on the colon.

Dr. Russo testified that assuming *arguendo* that the lung cancer was the cause of death, the lung cancer was brought on by the deceased's history of prolonged and heavy cigarette smoking and there was nothing in the deceased's occupational history which would have caused the cancer. Dr. Russo stated that if lung cancer were occupationally related, he would expect more than one case of lung cancer to have been reported in the past thirty-year history of the city's fire department. Witnesses from the fire department did not know of any other case of lung cancer among the men during that

period of time. A medical report compiled by Dr. T. A. Ryan in consultation with the deceased, dated December 26, 1968, which was received on stipulation as to its authenticity, stated that the deceased had smoked cigarettes since age fourteen and his current rate of consumption averaged one-and-one-half to two packs a day. Dr. Russo's opinion was based on this information plus the testimony by other witnesses that the deceased was a smoker and did inhale. None of the witnesses, however, knew how much the deceased smoked, nor how long, nor what brand he smoked.

The applicant presented no expert medical testimony except that contained in the opinions and conclusions of the death certificate, autopsy report and medical history of the deceased.

On this and other testimony, the examiner recommended findings substantially adopting the testimony of Dr. Russo that either lung cancer or cancer of the colon caused the death, and that the lung cancer was caused by the deceased's prolonged history of heavy cigarette smoking and not by the deceased's intermittent exposures to smoke as a fireman. The examiner concluded that the deceased did not contract a disease due to his occupation, nor had his death been caused by a disease due to his occupation.

In rejecting the recommendations of the examiner, the ILHR found that the deceased died of lung cancer and that the applicant was entitled to the presumption provided by sec. 891.45, Stats.,[2] to the effect that the lung

[2] "891.45 Presumption of employment connection disease. In any proceeding involving the application by a municipal fireman or his beneficiary for disability or death benefits under s. 66.191 or any pension or retirement system applicable to firemen, where at the time of death or filing of application for disability benefits the deceased or disabled fireman had served a total of 5 years as a fireman and a qualifying medical examination given prior to the time of his joining the department showed no evidence of heart

cancer was caused by the deceased's employment. Relying on this presumption, the ILHR ordered payment pursuant to sec. 66.191 (2) (c).

The city raises the following issues on this review:

1. Did the ILHR commission adequately state its reasons for rejecting the recommended findings and order of the hearing examiner?

2. Can the applicant recover benefits under both sec. 66.191, Stats. 1971, and sec. 41.14, Stats.?

*Requirements for findings and conclusions.*

The city contends that the findings of the ILHR commission are inadequate as a statement of its reasons for rejecting the recommended findings and order of the hearing examiner. The issue thus raised involves a question concerning the scope of the requirements provided in sec. 227.12, Stats., which provides in relevant portion: "227.12 **Examination of evidence by agency.** . . . *Whenever the ultimate decision of the agency is contrary to the recommendations of the person conducting the hearing, the decision shall include a statement of facts and ultimate conclusions relied upon in rejecting the recommendations of the hearing officer.* The parties may by written stipulation waive compliance with this section." (Emphasis supplied.) Also raised are questions concerning due process, fundamental fairness, and the opportunity for meaningful judicial review. *Transamerica Ins. Co. v. ILHR Department* (1972), 54 Wis. 2d 272, 195 N. W. 2d 656; *Transport Oil, Inc. v. Cummings* (1972), 54 Wis. 2d 256, 195 N. W. 2d 649.

---

or respiratory defect or disease, and where the disability or death is found to be caused by heart or respiratory defect or disease, such finding shall be presumptive evidence that such defect or disease was caused by such employment."

Because of the fundamental nature and importance of the issue, we have decided, as a matter of discretion, to undertake review of the questions presented despite the claim that the issue is raised for the first time on appeal. *See: State ex rel. General Motors Corp. v. Oak Creek* (1971), 49 Wis. 2d 299, 319, 182 N. W. 2d 481.

There were at least three instances in which the credibility of the testimony of Dr. Russo was an essential element in the disposition of this case. First, sec. 66.191 (1), Stats. 1971, required in this case that a determination be made that the deceased contracted lung cancer due to the deceased's occupation. Dr. Russo testified that it was not due to the deceased's occupation but rather that it was due to his prolonged history of cigarette smoking. Second, having submitted no direct evidence that the lung cancer was occupationally caused, the applicant relied on the presumption of sec. 891.45. As a basic fact essential to raise the presumption, it was necessary for the applicant to establish that death was caused by a respiratory disease, *i.e.,* lung cancer. Dr. Russo testified that the cause of death was generalized cancer, more likely precipitated by the cancer of the colon than by the lung cancer. Third, assuming without deciding that there was sufficient evidence to raise the presumption, a question remained as to whether the presumption had been rebutted, leaving only a surviving inference. *See: Sperbeck v. ILHR Department* (1970), 46 Wis. 2d 282, 174 N. W. 2d 546. In the *Sperbeck Case,* this court determined that evidence which attempted to affirmatively establish a cause of the respiratory defect other than the presumed occupational cause was proper rebutting testimony. The testimony of Dr. Russo, if credible, served to rebut the presumption by showing that the lung cancer was caused by cigarette smoking.

The testimony of Dr. Russo in this case, as relied upon by the hearing examiner, constituted substantial credible

evidence sufficient to support the examiner's recommended findings that the deceased did not contract a disease due to his occupation and that his death had not been caused by a disease due to his occupation.

The ILHR commission, in rejecting the recommended findings and order and substituting therefor its own findings and order, relied on the conclusions of the death certificate and autopsy protocol which were in conflict with Dr. Russo's testimony. The commission further relied on the availability of the statutory presumption which created an inference directly contrary to Dr. Russo's testimony. Despite the importance of Dr. Russo's credibility in this case, there is nothing in the record which affirmatively shows that the ILHR commission consulted the hearing examiner with regard to his impressions or conclusions as to the credibility of Dr. Russo; there is no separate statement or memorandum opinion giving the reasons why the ILHR commission reached a decision contrary to that of the examiner; and, there is no finding with regard to the effect of Dr. Russo's rebutting testimony on the statutory presumption.

Our inquiry begins with the proposition set forth by this court in *Falke v. Industrial Comm.* (1962), 17 Wis. 2d 289, 116 N. W. 2d 125, that there is a constitutional right, in cases involving the credibility of a witness as a substantial element, to have the benefit of the demeanor evidence which is lost when the agency decides the controversy without the participation of the hearing examiner who heard the testimony. *See also: Shawley v. Industrial Comm.* (1962), 16 Wis. 2d 535, 114 N. W. 2d 872.

In *Braun v. Industrial Comm.* (1967), 36 Wis. 2d 48, 153 N. W. 2d 81, in response to a contention that under the rule of presumed regularity of an agency's actions—a contention also made in the present case—this court

held that it would not presume that the hearing examiner had been consulted by the commission as to his impressions in regard to the demeanor of the witnesses. In the *Braun Case* the hearing examiner had rejected the testimony of a witness crucial to the petitioner's view of the case, and the commission, as in the present case, rejected the findings of the examiner. In reversing the judgment of the circuit court which had affirmed the findings of the commission, we held that due process required that the record affirmatively show that the commission had the benefit of the examiner's personal impressions of the material witnesses. *Braun v. Industrial Comm., supra,* page 57. *See also: Briggs & Stratton Corp. v. ILHR Department* (1969), 43 Wis. 2d 398, 168 N. W. 2d 817.

It soon became apparent that a simple recitation in the record that the commission had consulted with the hearing examiner, was not an adequate safeguard to the rights of the parties. Nor did such a recitation insure the existence of a sufficient basis for judicial scrutiny especially in the special case where the decision of the commission was contrary to the findings or recommendations of the hearing examiner.

Thus, in *Burton v. ILHR Department* (1969), 43 Wis. 2d 218, 168 N. W. 2d 196, 170 N. W. 2d 695, this court stated at page 224:

". . . the bare bones requirement of *Braun* . . . in this case [has] been met, and that is sufficient to meet the due process test.

"However, it is clear that the problem facing a judicial review of the record here has not been eased. . . ."

This court then pointed out that it would have been proper, prudent and helpful if the agency, in a situation where the recommended findings of the examiner are rejected or reversed, submitted a statement or memorandum opinion giving the reasons for such rejection or reversal.

In *Transamerica Ins. Co. v. ILHR Department, supra,* when it became apparent that the ILHR was content to follow the bare bones requirement of the *Braun Case,* with the slight addition of a conclusory finding that the hearing examiner committed "probable error," this court made the procedure that was suggested in the *Burton Case* a mandatory requirement. *See also: Simonton v.* ILHR Department (1974), 62 Wis. 2d 112, 214 N. W. 2d 302. In so doing, we relied not only on the right to due process and meaningful judicial review but also notions of fundamental fairness:

". . . The parties . . . are entitled to know, not only that the department set aside the findings of an examiner but why it did so—not only what independent findings the department found proper, but on what basis and evidence it made such findings. Particularly is this true where credibility of witnesses is involved. Fundamental fairness requires that administrative agencies, as well as courts, set forth the reasons why a fact-finder's findings are being set aside or reversed, and spell out the basis for independent findings substituted." *Transamerica Ins. Co. v. ILHR Department, supra,* page 284.

While the above-discussed cases involved claims under the Workmen's Compensation Act where review was under ch. 102, Stats., rather than ch. 227, we are of the opinion that the same requirements are applicable to the present case. *Cf. Transport Oil, Inc. v. Cummings, supra.* In addition to the due process rights of the parties, the notion of fundamental fairness, and the need for meaningful judicial review which have heretofore served as the basis for our decisions, the present case is governed by sec. 227.12. We are of the opinion that that section requires nothing less than the procedures mandated for compensation cases, and further requires a statement of facts and ultimate conclusions relied upon in rejecting the hearing examiner's recommendations regardless of

whether the credibility of a witness is a substantial element in the case.

We, therefore, hold that the failure of the record to affirmatively show that the ILHR commission consulted with the hearing examiner in respect to his impressions and conclusions in regard to the credibility of the witnesses, coupled with the failure of the ILHR commission to prepare a separate statement or memorandum opinion setting forth the reasons, facts and ultimate conclusions relied upon in rejecting the recommendations of the examiner and in substituting its own findings, requires that the decision of the circuit court be reversed with directions to remand to the ILHR. Should the ILHR find it necessary to take additional testimony to resolve the issues, justice and public policy require that it do so. *Jos. Schlitz Brewing Co. v. ILHR Department,* post, p. 185, 226 N. W. 2d 492; *Burton v. ILHR Department, supra,* page 228b.

### Simultaneous recovery.

Without citation of authority to support its argument, the city asserts that sec. 66.191, Stats. 1971, prohibits recovery where recovery has also been had under sec. 41.14 (Wisconsin Retirement Fund). There is undisputed evidence that the applicant has received a payment of $21,851 from the Wisconsin Retirement Fund pursuant to sec. 41.14.

Sec. 66.191 (2) (c) and (5), Stats. 1971, as previously quoted, prohibit the simultaneous recovery of benefits under that section and ch. 102 or sec. 41.13. There is no similar prohibition as to recovery under sec. 41.14. We are of the opinion that the familiar principle of *expressio unius est exclusio alterius* (express mention and implied exclusion) applies, and that the failure to provide that sec. 41.14 is an exclusive remedy, as was done with ch.

102 and sec. 41.13, indicates a clear intention to permit double recovery. *See:* 82 C. J. S., *Statutes,* pp. 666–668, sec. 333; *cf. Teamsters Union Local 695 v. Waukesha County* (1973), 57 Wis. 2d 62, 203 N. W. 2d 707; *Wood County v. Board of Vocational Technical & Adult Education* (1973), 60 Wis. 2d 606, 211 N. W. 2d 617.

Because we have determined that the judgment of the circuit court must be reversed and the cause remanded to the ILHR for further proceedings, we feel it unnecessary to undertake a discussion of the other issues raised by the city.

*By the Court.*—Judgment reversed with directions to remand to the Department of Industry, Labor & Human Relations for further proceedings not inconsistent with this opinion.

HEFFERNAN, J. *(dissenting).* Three facts must be established to trigger the statutory presumption under sec. 891.45, Stats. The fireman must have been found to be free of any respiratory disease at the time of hiring, he must have served a total of five years as a fireman, and his disability or death must have been caused by a respiratory disease. If all three factors are present, there is "presumptive evidence that such defect or disease was caused by such employment."

In this case, Schroeder was disease-free at the time of his employment, and he served more than five years as a fireman. These two factors are undisputed. There is also positive, undisputed documentary evidence that Schroeder died of a respiratory disease. The death certificate gives the cause of death as "Bronchopneumonia . . . associated with bronchogenic carcinoma . . . ."

In accordance with sec. 227.12, Stats., the decision of the department included "a statement of facts and ultimate conclusions relied upon in rejecting the recommendations of the hearing officer."

The department found, and the circuit judge agreed, that the cause of death was "pneumonia." The writer of this dissent finds no contrary finding in the recommended findings of the examiner. He acknowledged that death was caused by pneumonia. The fact that the examiner relied upon the testimony of Dr. Russo, who concluded that cancer, induced by cigarette smoking, was the probable cause of the pneumonia, is irrelevant.

It is irrelevant, because that is not the finding the department made. Had the department found that the deceased contracted the disease from cigarette smoking and not from his occupation, there would have been substantial evidence to support that finding. Dr. Russo's testimony was not incredible. The question is not whether there was substantial credible evidence to support a finding that was not made, but whether there was substantial credible evidence to support the finding that was made. *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182. Hence, it is clear that, in order to sustain a finding based on credible evidence, there need not be a finding or conclusion that the evidence not relied on was incredible.

Accordingly, the evidence before the department—the evidence of Dr. Russo, which the majority contends should have been further analyzed in company with the examiner to determine its credibility—was before the department unchallenged as to credibility.

On the other side of the coin was the statutory presumption under sec. 66.191, Stats. 1971. The credible evidence of Dr. Russo tended to rebut that presumption. However, we stated in *Sperbeck v. ILHR Department* (1970), 46 Wis. 2d 282, 174 N. W. 2d 546, even were there a credible contradiction of the presumption, an inference remains that is sufficient to support a finding of an employment-related injury. Hence, under *Sperbeck*, there was probative and credible evidence to sustain the finding

the department made. It had the choice either to accept the finding postulated by Dr. Russo's credible testimony or to accept the finding that followed from the inference that remained.

We said in *Robertson Transportation Co. v. Public Service Comm.* (1968), 39 Wis. 2d 653, 658, 159 N. W. 2d 636:

"Substantial evidence is not equated with preponderance of the evidence. There may be cases where two conflicting views may each be sustained by substantial evidence. In such a case, it is for the *agency* to determine which view of the evidence it wishes to accept. Likewise, there are cases where only one view can be supported by substantial evidence and the determination depends upon the credibility of witnesses." (Emphasis supplied.)

It is clear that, in this case, we deal with the first type of situation discussed in *Robertson*—the situation in which there are alternative findings, each supported by substantial credible evidence.

Under these circumstances, the rationale of *Braun v. Industrial Comm.* (1967), 36 Wis. 2d 48, 153 N. W. 2d 81, and *Briggs & Stratton Corp. v. ILHR Department* (1969), 43 Wis. 2d 398, 168 N. W. 2d 817, is irrelevant. The credibility of Dr. Russo is not challenged. No due process question arises. Under the law, the department was obliged either to award compensation or not make an award. Either conclusion would have found support in the evidence determined by the examiner.

The legislature has seen fit to create a presumption which, under *Sperbeck, supra,* will result in a surviving inference that will *always* support an award if the three criteria of sec. 66.191, Stats., are met.

Whether this is wise legislative policy is not for this court to decide, but it is policy we must follow. It is not a proper function of this court to thwart the legislative

will under the guise of a dubious claim of due process. The award should be affirmed.

I am authorized to state that Mr. Chief Justice WILKIE and Mr. Justice DAY join in this dissent.