CARLEY FORD, LINCOLN, MERCURY, INC., Appellant, v. BOSQUETTE, and others, Respondents.

*No. 75–14. Argued May 3, 1976.—Decided May 14, 1976.*
(Also reported in 241 N. W. 2d 596.)

570

For the appellant there was a brief by *David J. Smith* and *O'Melia, Melby, Simon & Smith, S. C.,* and oral argument by *David J. Smith,* all of Rhinelander.

For respondent Department of Industry, Labor & Human Relations the cause was argued by *James L. Pflasterer,* attorney, with whom on the brief was *Uclair W. Brandt,* chief counsel and *David A. Pearson,* assistant chief counsel.

WILKIE, C. J. In this unemployment compensation case the controversy on this appeal concerns whether the six respondent-employees, Fred J. Bosquette, Roland H. Haenel, Paul R. Joki, Edmund O. Mahner, Arnold R. Mahner, and Roy W. Oelrich, originally left their employment with the appellant-employer, Carley Ford, Lincoln, Mercury, Inc., because of a strike but were subsequently discharged by the employer, thus rendering them eligible for unemployment benefits subsequent to their discharge. The respondent, Department of Industry, Labor and Human Relations, entered an order to that effect. We agree with the circuit court's affirmance of that decision.

The six employees worked as automobile mechanics for Carley Ford, a franchised new and used car dealer located in Rhinelander, Wisconsin. At the end of May, 1973, the contract between the employer and the local labor union to which they belonged expired. After negotiations for a new contract proved unsuccessful, the union went out on strike on August 8, 1973. The employer hired replacement mechanics for all of the striking employees.

On October 2, 1973, a mediator for the Wisconsin Employment Relations Commission set up a meeting between

the representative of the employer, Attorney David Smith, and two union representatives, Jerry Allain, a business representative for the local, and Raymond Yessa, the president of the local. The crux of the DILHR determination here concerns what transpired at this meeting. DILHR made the following findings of fact regarding it:

"The mediator, the employer's attorney, the business representative of the union local and the president of the union local were at the October 2 meeting. The meeting had been set up by the mediator for the purpose of discussing when the strikers might be able to return to work and other issues. The mediator asked the parties to state their respective positions. The president of the local explained that the men were willing to return to work if the dispute could be settled in accordance with a position that the employes had previously stated. The employer's attorney commented that all the replacement employes which the employer had hired since the start of the strike were considered to have been hired as permanent employes and that the strikers would not be placed back on the job. He further stated that the employer simply did not have enough work for both the strikers and their replacements. He indicated that the strikers would not be put back to work. In addition, he stated that all of the replacement workers had been hired on a permanent basis and that if any of the strikers did return to work they would have to start from 'scratch' and would be treated as newly hired workers. After the meeting the president of the local spoke to some of the employes who were on the picket line. He informed them in a general way that their replacements at the employer's garage had been hired as permanent workers and that it appeared they no longer had jobs with the employer."

A hearing examiner, acting as an appeal tribunal, had decided that the statements of the employer's attorney did not constitute a termination of the employees which would render them eligible for unemployment compensation.

The employer-appellant first challenges the DILHR findings as being unsupported by credible evidence. There is ample credible evidence in the record to support the findings regarding the statements of the employer's attorney. In fact, nearly all the evidence in the record supports these findings, since only Allain and Yessa testified about the meeting, and the findings are based upon their essentially similar accounts of what was said. Appellant questions the finding that, if any employees returned, they would have to start from "scratch" and would be treated as new hires, on the ground that Yessa did not recall any such statement having been made. However, as the trial court stated, Allain specifically testified that this statement had been made, and both the appeal tribunal and the department credited his testimony, as they surely had the right to do.

The employer also takes issue with the departmental findings regarding the purpose of the meeting and the position taken by the union at the meeting. He contends that the meeting was called to discuss vacation and seniority issues, and not the status of the employees, and that the union altered its position at the meeting, and did not merely state its previous position. It is readily apparent that the only important departmental findings regarding this meeting are those related to what the employer's attorney stated regarding the status of the employees. It is only these findings which form the factual basis for the conclusion that the employer elected to terminate the employees at the time of the October 2d meeting. The exact purpose of the meeting and the exact consistency of the union position then taken with a previous position are not relevant to this ultimate conclusion.

Appellant next claims that the hearing examiner's synopsis, on the basis of which DILHR entered its findings, is erroneous and prejudicial. Action by the depart-

ment on the basis of the hearing examiner's synopsis has uniformly been held to fulfill the requirements of sec. 102.18 (3), Stats., which requires that the department's action be based upon a review of the actual evidence submitted.[1] It is required that this synopsis be "an adequate and fair summary of the material testimony so that the commissioners are able to get an accurate impression of the testimony elicited."[2] The appellant claims that the hearing examiner's synopsis was inaccurate here because there were inconsistencies between the synopsis and the actual transcript relative to the purpose of the October 2d meeting and the position of the union then taken. Appellant also points out that the synopsis contains a typographical error. Attorney Smith is reported to have said that the striking employees "had a permanent vacation," rather than that the replacement employees were "permanent replacements."

These contentions must fail for two reasons. First of all, the differences between the synopsis and the transcript are either so minor or so irrelevant to the principal finding of what was said by the employer's attorney that it cannot be concluded that the synopsis was so inadequate and so unfair as to prevent the department from getting an accurate impression of the material evidence. Secondly, it is clear that the departmental findings are supported by credible evidence in the actual transcript. Since this is so, these slight mistakes in the synopsis did not as a matter of law prejudice the appellant.[3]

As a third ground of his appeal, Carley argues that the department disagreed with the appeal tribunal on material findings of fact relating to the credibility of

[1] *Vasquez v. ILHR Department* (1968), 39 Wis. 2d 10, 15, 158 .N. W. 2d 331, and cases there cited.

[2] *Id.*

[3] *Id.* at page 16.

witnesses, but did not follow the prescribed procedure for doing so. It is the rule in Wisconsin that where the department differs with its hearing examiner, acting as an appeal tribunal, in regard to material findings of fact based on an appraisal of the credibility of witnesses, it must (1) consult of record with the examiner to glean his impressions of the credibility of witnesses and (2) include in a memorandum opinion an explanation for its disagreement with the examiner.[4]

Appellant argues that Allain testified that Smith had said that, if any of the six employees were hired back, they would be hired back without seniority and would be treated as new hires, whereas Yessa testified that he did not hear any such statement made. This, it is asserted, raises a question of credibility of the witnesses.

But this difference in testimony between Allain and Yessa is irrelevant, because both the appeal tribunal and the department chose to credit Alain on this point, rather than Yessa. In other words, the hearing examiner and the department *agreed*, rather than disagreed, on the credibility of the two witnesses. The appeal tribunal found as follows:

". . . That attorney [employer's] commented also in the course of the meeting that if the striking employes were taken back by the employer, they would not retain any of their previous seniority and would have to begin as newly hired workers."

[4] *Appleton v. ILHR Department* (1975), 67 Wis. 2d 162, 226 N. W. 2d 497; *Simonton v. ILHR Department* (1974), 62 Wis. 2d 112, 214 N. W. 2d 302; *Transamerica Ins. Co. v. ILHR Department* (1972), 54 Wis. 2d 272, 195 N. W. 2d 656; *Burton v. ILHR Department* (1969), 43 Wis. 2d 218, 168 N. W. 2d 196, 170 N. W. 2d 695; *Briggs & Stratton Corp. v. ILHR Department* (1969), 43 Wis. 2d 398, 168 N. W. 2d 817; *Braun v. Industrial Comm.* (1967), 36 Wis. 2d 48, 153 N. W. 2d 81; *Falke v. Industrial Comm.* (1962), 17 Wis. 2d 289, 116 N. W. 2d 125; *Shawley v. Industrial Comm.* (1962), 16 Wis. 2d 535, 114 N. W. 2d 872; *Wright v. Industrial Comm.* (1960), 10 Wis. 2d 653, 103 N. W. 2d 531.

The department similarly found:

".... The employer's attorney ... indicated that ... if any of the strikers did return to work they would have to start from 'scratch' and would be treated as newly hired workers."

The only divergence between these findings is that the appeal tribunal stated Allain's testimony in terms of the obvious inference to be drawn therefrom, namely that the six employees had lost all seniority, whereas the department found the fact in terms of Allain's actual testimony, namely, that the employees would have to start from scratch. This is not a disagreement over the credibility of witnesses; it is merely two slightly different ways of stating the same finding and the same decision about the credibility of Allain.

The difference between the department and the appeal tribunal was not as to any factual matter, but as to the legal consequences of their respective findings. The department did not accept the hearing examiner's legal recommendation that the facts found did not constitute a termination of the employees so as to render them eligible for unemployment compensation. However, legal differences between the appeal tribunal and the commission do not trigger the special requirements of consultation of record with the examiner and separate explanation by the department of the basis for its disagreement.[5] In any case, the department did consult generally with the hearing examiner before reaching its decision, and did set forth the reasons for its legal disagreement in a memorandum opinion.

The last issue presented on this appeal is whether or not, on this record, the employer took such affirmative action to terminate the employee status of the respondents during the progress of the strike that the in-

[5] *Briggs & Stratton Corp. v. ILHR Department, supra,* footnote 4, at page 410.

eligibility to receive benefits set forth in sec. 108.04 (10), Stats., no longer applies:

"(10) LABOR DISPUTE. An employe who has left (or partially or totally lost) his employment with an employing unit because of a strike or other bona fide labor dispute shall not be eligible for benefits from such (or any previous) employer's account for any week in which such strike or other bona fide labor dispute is in active progress in the establishment in which he is or was employed."

It is conceded that the employees did not engage in misconduct,[6] so that if they were in fact discharged during the progress of the strike, they are eligible for benefits.

All parties also concede that the outcome of this case is ruled by the principles established in *Marathon Electric Mfg. Corp. v. Industrial Comm.*[7] and *Rice Lake Creamery Co. v. Industrial Comm.*[8] *Marathon* held that striking employees discharged during a strike were not ineligible to receive unemployment compensation because of sec. 108.04 (10), Stats. *Rice Lake Creamery* held that the hiring of permanent replacements is not an automatic discharge of those striking employees who are replaced. Both cases established the further principle that the employer must take some "affirmative action"[9] to discharge the employees beyond mere replacement by permanent employees. Where this alleged affirmative action of the employer is not "an unequivocal unilateral act of the employer,"[10] the court must resort to the con-

[6] *See:* sec. 108.04 (5), Stats.

[7] (1955), 269 Wis. 394, 69 N. W. 2d 573, 70 N. W. 2d 576.

[8] (1961), 15 Wis. 2d 177, 112 N. W. 2d 202.

[9] *Marathon Electric Mfg. Corp. v. Industrial Comm., supra,* footnote 7, at page 408; *Rice Lake Creamery Co. v. Industrial Comm., supra,* footnote 8, at page 183.

[10] *Rice Lake Creamery Co. v. Industrial Comm., supra,* footnote 8, at page 187.

duct of the employer and the employees in order to determine whether the employees have been terminated. The resolution of this issue involves a conclusion of law, since it can be arrived at only by application of fixed rules of law.[11]

In this case the statements of position by the employer's representative made at the October 2d meeting, when considered with the conduct of both parties before and after the meeting, lead to the conclusion that the employer did terminate the employees at the October 2d meeting. There is no question that Attorney Smith had the authority to act for the employer in this regard. Jere Carley, the owner of Carley Ford, testified that he had authorized Smith to act as his representative in dealing with the union. Allain also testified that Smith identified himself as Carley's spokesman at the October 2d meeting.

As for the attorney's statements of position, they clearly contained a message to the striking employees' representatives that these employees had been discharged. Appellant argues that the employer's representative did nothing more than indicate that the striking employees had been permanently replaced. Yet the evidence reveals that his message went well beyond this. He told them that, not only had the employer hired permanent replacements, he had also decided that the striking employees would not be rehired or placed back to work, and that there was no room for both groups in the shop. This indicates that he had, as of October 2, 1973, made an affirmative decision to discharge these six employees and go with the replacements he had hired. The further statement of the employer's attorney that "if any employees did return, they would be starting from scratch" and would be treated as new hires, is fully consistent with this decision to terminate. The message is that the striking employees, if they applied for a

---

[11] *Id.*

job, would be treated as discharged employees, with no special rights or privileges.

Both Allain and Yessa reasonably interpreted these statements of position to be a message to the employees that they had been terminated. Allain testified that "[t]he meaning that I got out of it at that particular point was that the striking employees no longer had a job there." Yessa testified that he took the company's position to be that "practically these people were out of a job." After the meeting both Allain and Yessa went to the picket line and told the striking employees there that they had lost their job. Less than one month later, at the unemployment compensation hearing, the employees took the position that they had been discharged as of October 2, 1973, and were thus eligible for benefits after that time.

In sum, nearly all of the evidence in this record points to a conclusion that these six employees were discharged by the affirmative action of the employer's representative on October 2, 1973. This is not a case like *Rice Lake Creamery*, where both the union and the employees took action that was thoroughly inconsistent with the conclusion that they had been discharged. The circuit court was correct in concluding that, as of October 2, 1973, the employer terminated the employee status of these respondents.

*By the Court.*—Judgment affirmed.