Larsen Company and another, Appellants, v. Industrial
Commission and another, Respondents.

*January 8—February 2, 1960.*

For the appellants there were briefs by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Lloyd J. Planert.*

For the respondent Industrial Commission the cause was argued by *Mortimer Levitan,* assistant attorney general,

with whom on the brief was *John W. Reynolds,* attorney general.

CURRIE, J. The issues on this appeal are: (1) Is there any credible evidence which, if unexplained, will sustain the finding of the commission that the employee was totally disabled from March 8, 1955, through December 9, 1956, as a result of her injury of August 24, 1954; and (2) did the healing period continue as a matter of law until performance of the arthrodesis operation so as to entitle the employee to temporary total disability benefit payments irrespective of whether she actually was totally disabled?

The only medical witness who testified at the hearing was Dr. McGuire, but he was permitted to testify with respect to records and reports made by his associate, Dr. Nellen. So far as the record discloses, Drs. McGuire and Nellen were the only physicians who examined or treated the employee. On February 25, 1955, Dr. McGuire examined her and found that her condition had reached a plateau and estimated the permanent partial disability at 25 per cent of the foot at the ankle. The employee was not seen again by either Dr. McGuire or Dr. Nellen until some thirteen months later when she came to see Dr. Nellen on April 9, 1956.

As a result of Dr. Nellen's examination of the employee on April 9, 1956, he submitted a written report of such examination to the insurance carrier. In such report Dr. Nellen reported that the pain in the ankle was growing worse and that X rays showed that the ankle joints were narrowed as a result of traumatic arthritis. Such report further stated, "We hesitate to recommend an arthrodesis of the ankle, but I believe she should then be observed three months before making a final determination." Apparently no treatment was given or recommended by Dr. Nellen on April 9, 1956, and none was given between then and the arthrodesis operation on December 10, 1956.

During the period from February 25, 1955, to December 10, 1956, the employee did some work around her home while sitting down, such as washing dishes, baking, and ironing; she also did a little housework, but not much. She walked with a cane. The leg would swell up and pain whenever she was on it for an hour or two, and then she would lie down. However, she testified that her condition stayed the same from March, 1955, until the operation on December 10, 1956. It was her further testimony that *her condition is no better since the operation than it was before,* and that if she now stands for ten or fifteen minutes it gets so that she can hardly walk.

Dr. McGuire testified that she might have the same disability after the operation as before, or the disability might be greater after the operation, but he could not give an opinion on this because he did not examine her before the operation. His last examination of her prior to the operation was February 25, 1955. He further stated that a patient may choose to sacrifice joint motion by undergoing the operation in order to eliminate pain. However, there is no evidence that the employee's pain did improve as a result of the operation.

Dr. McGuire was also asked the following question and gave the following answer thereto:

"Q. And as I understand your testimony, then, as far as the healing period, was it your opinion that she had completed the healing period as of February 25, 1955? A. Yes, in regards to a fractured ankle, there is nothing more we could do to her ankle at that time that would change her development of traumatic arthritis. It is just an unfortunate sequence of joint injury and there is no known treatment that will abort the onset of traumatic arthritis. They may get it or may not."

There is no evidence in the record which sustains the commission's finding that the employee was totally disabled

from March 8, 1955, through December 9, 1956. All the evidence establishes is that her condition did worsen between February 25, 1955, and April 9, 1956, and that she now has a 40 per cent permanent disability of the foot at the ankle. There is no medical testimony that at any time between February 25, 1955, and April 9, 1956, her disability ever exceeded 40 per cent of the loss of the foot at the ankle. Not only is there no medical testimony that her disability was ever greater than 40 per cent of the foot at the ankle subsequent to February 25, 1955, but the employee testified that her condition after the operation is the same as it was immediately prior thereto. Furthermore, she underwent no treatment for her ankle from February 25, 1955, until the operation of December 10, 1956.

The burden of proof to establish total disability from March 8, 1955, through December 9, 1956, is upon the employee. *Johnston v. Industrial Comm.* (1958), 3 Wis. (2d) 173, 179, 87 N. W. (2d) 822, and *Unruh v. Industrial Comm.* (1959), 8 Wis. (2d) 394, 399, 99 N. W. (2d) 182. The employee failed to meet such burden of proof. This would be sufficient to dispose of the instant appeal if it were not for a contention advanced in the brief of the attorney general.

Such contention is that it was impossible to determine the extent of permanent disability until the arthrodesis was performed on December 10, 1956, and, therefore, the healing period did not end prior thereto. Carried to its logical conclusion in every case in which the commission awards permanent partial disability and reserves jurisdiction, and later awards a greater percentage of permanent partial disability, because of a worsening of the employee's condition, the employee would be entitled to temporary total disability until such later percentage of disability is determined. This certainly is not the law. The governing statute is sec. 102.43,

and there is nothing in such statute which will support the attorney general's contention.

The attorney general grounds his contention principally upon the following statement appearing in the opinion in *Knobbe v. Industrial Comm.* (1932), 208 Wis. 185, 189, 242 N. W. 501:

"The healing period is understood to mean, and is generally construed by the Industrial Commission as meaning, the period prior to the time when the condition becomes stationary. This requires the postponement of the fixing of the permanent partial disability to the time that it becomes apparent that the leg will get no better or no worse because of the injury. The healing period is expected to be temporary, during it the employee is submitting to treatment, is convalescing, still suffering from his injury, and unable to work because of the accident. The interval may continue until the employee is restored so far as the permanent character of his injuries will permit."

The first two sentences of such quotation standing alone do support the attorney general's contention. However, they are qualified by the conditions stated in the ensuing sentence that requires the employee to be submitting to treatment and be convalescing, and that the disability be of a temporary nature. Such further conditions were not present in the instant case with respect to the period of March 8, 1955, through December 9, 1956.

An employee's disability is no longer temporary when the point is reached that there has occurred all of the improvement that is likely to occur as a result of treatment and convalescence. At such point the commission is enabled to make a determination of percentage of permanent disability and award compensation benefits therefor. If the record before the commission indicates that a definite determination cannot then be made that the employee will not sustain a greater percentage of disability in the future, the commission

should reserve jurisdiction by making its award interlocutory. *Maynard Electric Steel C. Co. v. Industrial Comm.* (1956), 273 Wis. 38, 76 N. W. (2d) 604. However, there is nothing in sec. 102.43, Stats., which authorizes the commission to continue awarding temporary total disability until such time as it is possible to accurately measure the maximum amount of permanent partial disability that may occur at some future time.

The result in the instant case is not dependent upon the fact that the insurance carrier paid the employee benefits for the 25 per cent permanent partial disability of the foot at the ankle upon the physician's report instead of pursuant to an interlocutory award of the commission. This is merely a fortuitous circumstance which is not material to the determination of the issue before us.

While not material to this appeal, we deem it advisable to clarify the hereinbefore-quoted statement from *Knobbe v. Industrial Comm., supra,* in one further respect. Such statement, in attempting to define the healing period, includes a requirement that the employee be "unable to work because of the accident." This does not mean that the employee has to be wholly unable to work in order to be entitled to temporary disability benefits during the healing period. Temporary partial disability compensation benefits may be awarded to an employee while he is convalescing and undergoing treatment, if he at the same time is able to do some work because his injury is of a nature that does not totally disable him.

*By the Court.*—Judgment reversed, and cause remanded with directions to set aside and vacate the order of the commission.