KESSLER, Appellant, v. INDUSTRIAL COMMISSION and another, Respondents.

*March 31—April 27, 1965.*

For the appellant there was a brief and oral argument by *Stephen J. Hajduch* of Milwaukee.

For the respondent Industrial Commission there was a brief and oral argument by *Arnold J. Spencer,* chief counsel of the unemployment compensation division.

HALLOWS, J. The plaintiff recognizes the findings of the Industrial Commission cannot be set aside on appeal in the absence of fraud if there is sufficient credible evidence or reasonable inferences which support the findings. *Grant County Service Bureau v. Industrial Comm.* (1964), 25 Wis. (2d) 579, 131 N. W. (2d) 293; *Cooper's, Inc., v. Industrial Comm.* (1962), 15 Wis. (2d) 589, 113 N. W. (2d) 425; and *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269 Wis. 394, 69 N. W. (2d) 573. The plaintiff also recognizes the equally well-established rule that where the evidentiary facts are not in dispute but permit of different inferences the drawing of one of such inferences is a finding of fact within the province of the Industrial Commission. *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 56 N. W. (2d) 525. This court has held, however, and the plaintiff rests his case on the proposition that if the evidentiary facts are not in dispute and permit of only one reasonable inference, the drawing of that inference is a question of law and not of fact. *Brown v. Industrial Comm.* (1960), 9 Wis. (2d) 555, 101 N. W. (2d) 788; *Gregory v. Anderson* (1961), 14 Wis. (2d) 130, 109 N. W. (2d) 675; *Cutler-Hammer, Inc., v. Industrial Comm.* (1961), 13 Wis. (2d) 618, 109 N. W. (2d) 468.

It is contended on this record by the plaintiff that only one reasonable inference can be drawn, namely, that his quitting of his job was with good cause attributable to the employer. The "compelling personal reason" basis was not stressed below or on this appeal and in fact is based on identical facts

constituting the alleged good cause attributable to the employer.

Good cause attributable to the employer as a basis for unemployment compensation under sec. 108.04 (7) (b), Stats., has been the subject of prior decisions of this court. In *Western Printing & Lithographing Co. v. Industrial Comm.* (1951), 260 Wis. 124, 50 N. W. (2d) 410, we stated the resignation must be occasioned by "some act or omission by the employer" constituting a cause which justifies the quitting. Good cause for quitting attributable to the employer as distinguished from discharge must involve some fault on his part and must be real and substantial. 81 C. J. S., Social Security and Public Welfare, pp. 253–256, sec. 167. A transfer or shift in jobs occasioned by decreased work in an assembly department due to the reduction in demand for defense production is not a good cause for quitting even though there would be a temporary reduction in salary, but the employee's seniority would be unaffected. *Dentici v. Industrial Comm.* (1953), 264 Wis. 181, 58 N. W. (2d) 717. Similarly a transfer in job status necessitated by lack of work in a welding department which shift would reduce the salary but not affect seniority was not a good cause for quitting in *Roberts v. Industrial Comm.* (1957), 2 Wis. (2d) 399, 86 N. W. (2d) 406. In that case we pointed out that one of the purposes of the unemployment compensation statute was to minimize the loss of income from unemployment due to the fault or the misfortune of the employer but the statute was not intended to provide relief when reasonable work was available which the employee can but will not do.

The plaintiff claims the record shows that when he commenced his employment as plant superintendent in the small manufacturing plant of the defendant he devoted about 75 percent of his time to plant duties and 25 percent to so-called paper work; that over the years the paper work demanded

considerably more time and encroached on his plant supervision. Plaintiff was in charge of safety in the plant. Several serious accidents occurred because of the failure of machine operators to use safety devices. In 1962 the president wrote a memo to the plaintiff which in effect held the plaintiff responsible for the lack of safety practices and threatened discharge if another serious accident occurred. The plaintiff also claims a lack of communication had developed between him and the president.

Sometime in 1960 a Mr. Norton was hired as sales manager and on November 1, 1962, he was promoted to vice-president in charge of sales and production, thus making him in effect the plaintiff's superior. On November 3d at the plaintiff's request a conference was held with the president. During this conference the plaintiff was told he would receive no further bonuses. Bonuses had been paid the plaintiff and nonproduction employees since 1958 in varying amounts. They were not a part of the salary contract but were paid at the discretion of the board of directors. It was after this conference the plaintiff resigned.

At the hearing a statement (Exhibit 4) of the plaintiff, given in an interview with the commission concerning his reasons for quitting the company, was put in evidence. It is quite apparent from this statement the plaintiff disliked Mr. Norton, did not consider him a good sales manager, was disturbed when Mr. Norton's name was mentioned and disappointed when Mr. Norton was promoted and made the plaintiff's superior. Without detailing any further evidence it is quite clear the evidentiary facts give rise to reasonably conflicting inferences and are not of such a compelling nature that only the plaintiff's version could be reasonably inferred.

The Industrial Commission drew the inference the plaintiff was dissatisfied with the action of the employer in pro-

moting Mr. Norton, in criticizing him for plant accidents, and in discontinuing bonuses. We cannot hold this was an unreasonable inference or that the facts compelled the drawing of a contrary inference. *Cheese v. Industrial Comm.* (1963), 21 Wis. (2d) 8, 123 N. W. (2d) 553. These activities of the defendant employer were within the prerogative of management and do not constitute a good cause for the plaintiff's quitting his employment.

At the hearing the plaintiff was refused permission to call the president of the defendant company adversely before he himself took the stand. The plaintiff contends he was entitled to adversely examine the defendant's president at the start of the proceeding, the same as he would in a civil trial in a court of record. The Industrial Commission in its decision recognizes the procedure relating to adverse examination of the parties as established and followed in proceedings before courts of record is an efficient procedure and an acceptable practice at hearings under ch. 108 of the statutes. However, the commission considered the time when an opposing party might be adversely examined in a hearing to be within the discretion of the hearing examiner. In this case the trial examiner allowed the plaintiff to adversely examine the president of the defendant company after the plaintiff testified.

Since the conduct of the hearings is governed by general commission rules under sec. 108.09 (5) (a), Stats., and such rules (sec. Ind–UC 140.05, 3 Wis. Adm. Code) provide the rules of practice at hearings shall conform generally to those used in equity proceedings, we would consider the plaintiff did have a right to examine the defendant's president adversely prior to the plaintiff's taking the stand on his own behalf. Under these rules it is not discretionary with the examiner to control the order of presenting witnesses. However, the plaintiff has not shown any prejudice from the pro-

cedure adopted by the examiner. The basis for the commission's findings rests essentially on the plaintiff's own statement of his reasons for quitting given to the commission on January 22, 1963 (Exhibit 4) rather than on the testimony of the president of the defendant company.

Plaintiff contends the commission erred in refusing to grant his request for an adjournment of the hearing in order to subpoena the minute book of the employer. The president of the defendant then testified he had told the plaintiff at the conference he was not going to receive further bonuses. At the hearing the president testified the bonuses were under study by the board of directors and no action had been taken with respect to 1962–1963 bonuses. In hopes of impeaching the president's statement that there would be no bonuses, the plaintiff asked for an adjournment of the hearing and for permission to obtain a copy of the board of directors' minutes and resolution, if any. The proposed examination of the corporate minutes was in the nature of a fishing expedition, the request for which under the circumstances the examiner could refuse without abusing his discretion.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.