ITW Deltar and Illinois Tool Works, Inc., Plaintiffs-Appellants,

v.

Labor & Industry Review Commission and Karla K. Mitchell, Defendants-Respondents.

Court of Appeals

*No. 98–2912. Submitted on briefs February 15, 1999.—Decided March 23, 1999.*

(Also reported in 593 N.W.2d 908.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Carol S. Dittmar* and *Chris-*

*topher M. Seelen,* of *Garvey, Anderson, Johnson & Geraci, S.C.* of Eau Claire.

On behalf of the defendants-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

Before Cane, C.J., Myse, P.J., and Hoover, J.

HOOVER, J. ITW Deltar and Illinois Tool Works, Inc., appeal a judgment affirming the Labor and Industry Review Commission's decision to award temporary total disability benefits[1] to Karla Mitchell for a period of time between her doctor-recommended surgery, which was delayed because she was pregnant, and the date of surgery. ITW contends that it has no obligation to pay disability benefits during that period for two separate reasons: (1) LIRC awarded disability benefits for a nonwork-related injury, the pregnancy; and (2) Mitchell was stabilized during the period of delay and was not in a compensable healing period. We disagree and hold that: (1) her work-related injury was the disabling injury, not her pregnancy; and (2) Mitchell was submitting to treatment during the delay, and there is no question that she would not reach her healing plateau until after surgery. ITW takes its workers as they are and cannot avoid the ramifications of Mitchell's pregnancy on her work-related injury. We therefore affirm the judgment.

---

[1] Section 102.43, STATS., contains the temporary disability provisions and provides in relevant part: "If the injury causes disability, an indemnity shall be due as wages . . . after the employe leaves work as the result of the injury, and shall be payable weekly thereafter, during such disability."

13

## BACKGROUND

On May 22, 1995, Mitchell sustained a work-related injury to her knee while employed by ITW. She was pregnant at the time. Dr. John Drawbert treated her shortly thereafter and took her off work. He recommended knee surgery, but indicated it would have to wait until she gave birth because anesthesia would harm her baby. While still off work, ITW laid Mitchell off.[2] Two days later Drawbert released her to return to work, but she had no job to return to. Mitchell gave birth on January 29, 1996. On March 27, she returned to Drawbert, who found her knee condition had not changed. He scheduled surgery which was performed on April 17.[3] Mitchell last saw Drawbert on August 28 when he assigned her a healing plateau.

Mitchell applied for disability benefits.[4] The administrative law judge determined that Mitchell was

---

[2] Her layoff triggered application of WIS. ADM. CODE § DWD 80.47, which provides:

> Even though an employe could return to a restricted type of work during the healing period, unless suitable employment within the physical and mental limitations of the employe is furnished by the employer or some other employer, compensation for temporary disability shall continue during the healing period.

[3] After the surgery, Dr. Drawbert, responding to ITW's letter inquiry, indicated that Mitchell should be able to return to work approximately three months from the date of surgery. He also opined that the healing period would have been the same if the surgery had been performed in 1995.

[4] Her application for benefits and the subsequent hearing dealt with additional issues that are not the subject of this appeal. We will therefore refer only to the issue raised on appeal, the propriety of the temporary total disability benefits award.

entitled to disability benefits from June 24, 1995,[5] through August 28, 1996, with the exception of the period from January 29, 1996, to March 27, 1996. The ALJ concluded that although the pregnancy delayed the surgery, the delay was not an unreasonable refusal or neglect to submit to treatment under § 102.42(6), STATS.[6] The ALJ further held that Mitchell reached her healing plateau on August 28, 1996, and that ITW never offered suitable work during her temporary disability period.

ITW appealed that decision to LIRC, and LIRC affirmed. ITW then appealed to the circuit court, which affirmed LIRC's decision. ITW now appeals to this court.

On appeal, ITW continues to assert that Mitchell is not entitled to disability benefits for anything beyond a three-month healing period.[7] ITW argues that Mitchell was stabilized and not in a healing period during her pregnancy and, even if she was, the pregnancy was a nonwork-related injury for which she is not entitled to disability benefits.

---

[5] ITW had paid disability benefits through June 23, 1995.

[6] Section 102.42(6), STATS., states in pertinent part:

Incidental compensation.

. . . .

(6) Treatment Rejected by Employe. . . . [N]o compensation shall be payable for the death or disability of an employe, if the death be caused, or insofar as the disability may be aggravated, caused or continued (a) by an unreasonable refusal or neglect to submit to or follow any competent and reasonable medical or surgical treatment . . . .

[7] ITW bases this three month period on Dr. Drawbert's letter giving a hypothetical period of recovery as opposed to Mitchell's actual period of recovery of four and one-half months. LIRC's award was based on the actual period and the record supports that finding.

## STANDARD OF REVIEW

On appeal, we review LIRC's, rather than the circuit court's, decision. *See Stafford Trucking v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). The duration of Mitchell's period of compensable temporary disability is a mixed question of fact and law that requires the application of a statutory standard to findings of fact. *See Larson v. LIRC*, 184 Wis. 2d 378, 386, 516 N.W.2d 456, 459 (Ct. App. 1994). LIRC's factual findings must be upheld if there is credible and substantial evidence in the record upon which reasonable persons could rely to make the same findings. Section 102.23(6), STATS.; *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173–74 (1983). The facts before us are not in dispute, although the characterization of those facts are. Once the facts are established, however, the application of those facts to the statute is a question of law. *See Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

In certain situations we defer to an agency's interpretation or application of a statute. *See UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996). The parties disagree as to whether we should accord LIRC's interpretation due weight or no deference. Due weight deference is appropriate when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the statute's interpretation than a court. *Id*. at 286, 548 N.W.2d at 62. The deference allowed is not so much based upon its knowledge or skill as it is on the fact that it is charged with the enforcement of the statute in question. *Id*. at

286, 548 N.W.2d at 62. De novo review is appropriate only when the issue is one of first impression, or the agency's position on the issue has been so inconsistent so as to provide no real guidance. *Id.* at 285, 548 N.W.2d at 62.

ITW asserts that de novo is the proper standard of review because: (1) the case is one of first impression for LIRC and there is very little authority from other states; (2) only one reasonable inference can be drawn from the evidence in this case, which makes the drawing of that inference a matter of law; and (3) this case involves interpretation of a statute, § 102.43, STATS., which is a question of law.[8] LIRC asserts that we should accord its decision due weight deference because: (1) it has been responsible, in various forms, for disability benefits determinations since the inception of the Compensation Act in 1911; *see* § 2394–9(2)(a), STATS., 1911; and (2) it has had experience construing the statutory phrase "healing period" since 1915; *see* § 2394–9(5)(e), STATS., 1915; *Wisconsin Lakes Ice & Cartage Co. v. Industrial Comm'n*, 167 Wis. 122, 123–24, 166 N.W. 664, 665 (1918).

We agree with LIRC and accord its decision due weight. ITW's arguments ignore the holdings in *UFE* and *Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 569 N.W.2d 726 (Ct. App. 1997).[9] In *Barron*, this court said:

> The test is not, however, whether the commission has ruled on the precise—or even substantially similar—facts in prior cases. . . . Rather, the cases tell us that the key in determining what, if any, deference courts are to pay to an administrative

---

[8] ITW contends the meaning of the statutory phrase in § 102.43, STATS., "[i]f the injury causes disability," is at issue.

[9] We have previously referred to the relevant portions of *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 548 N.W.2d 57 (1996).

agency's interpretation of a statute is the agency's experience in administering the particular statutory scheme—and that experience must necessarily derive from consideration of a variety of factual situations and circumstances. Indeed, we have recognized in a series of cases that an agency's experience and expertise need not have been exercised on the precise—or even substantially similar—facts in order for its decisions to be entitled to judicial deference.

*Id.* at 764, 569 N.W.2d at 732. ITW has not asserted that LIRC's position on the issue has been so inconsistent so as to provide no real guidance. Nor can it argue that LIRC has no experience administering the statutory scheme.

Since we accord LIRC's decision due weight, if there are equally reasonable interpretations of the law, we will defer to its interpretation. *See UFE*, 201 Wis. 2d at 287–78, 548 N.W.2d at 62–63. If there is another interpretation that we conclude is more reasonable, we will adopt that interpretation. *Id.*

■

During our review, we keep in mind that the Worker's Compensation Act, ch. 102, STATS., is to be liberally construed to effectuate its goal of compensating and making injured workers whole for both temporary and permanent wage loss. *See Brakebush Brothers v. LIRC*, 210 Wis. 2d 623, 634–35, 563 N.W.2d 512, 517 (1997); *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 102, 559 N.W.2d 588, 591 (1997).

## ANALYSIS

### 1. Disability Was Caused by Mitchell's Work-Related Injury

ITW argues that because the pregnancy prevented immediate surgery to cure the knee injury, the pregnancy and not the knee injury caused her continued unemployment. LIRC disagreed, concluding:

> However, the applicant's unemployment during her pregnancy (at least to the point of childbirth) was not the result of a personal ailment unrelated to employment. The applicant's knee injury was disabling. The pregnancy was not. . . . There is no evidence any restrictions were placed upon her while she was pregnant. . . .[H]er continued unemployment was caused by her knee injury and the employer's decision to lay her off.
>
> However, the respondent urges . . . that, because the pregnancy prevented immediate surgery to cure and relieve the effects of the knee injury, the pregnancy was the cause for her unemployment, not the knee injury itself. Again, however, the "as is" rule . . . precludes this result. Second, . . . if [the] disability is continued or extended by an unreasonable refusal to submit to surgery, it may not be compensated. This implies, that if temporary disability is continued by a reasonable refusal based on medical advice to delay surgery, it may be compensable. This seems particularly true where the reason for the refusal is a pre-existing medical condition that everyone is certain will resolve[d] within a fixed period of time.

We conclude that LIRC's position is more reasonable than that advanced by ITW and therefore defer to it. The "as is" rule has long been part of our worker's compensation law. In *Semons Dept. Store v. DILHR*, 50

Wis. 2d 518, 184 N.W.2d 871 (1971), our supreme court said:

> [A]n employer takes an employee "as is" and the fact that he may be susceptible to injury by reason of a pre-existing physical condition does not relieve the last employer from being held liable for workmen's compensation benefits if the employee becomes injured due to his employment, even though the injury may not have been such as to have caused disability in a normal individual.

*Id.* at 528, 184 N.W.2d at 876 (quoting *M & M Realty v. Industrial Comm'n*, 267 Wis. 52, 63, 64 N.W.2d 413, 418 (1954)). Although the rule apparently has not been applied to a situation when the preexisting condition delays treatment of the work-related injury, we see no reason why it should not. This is especially true here because Mitchell was following her doctor's advice in delaying surgery. If we were to adopt ITW's position, workers who sustain a disabling work-related injury, the treatment of which is reasonably delayed because of medical advice concerning a pre-existing condition, would not be compensated for their inability to work. That does not comport with the goals of the Act.

██

ITW insists the pregnancy was the disabling injury and claims LIRC acknowledged this by not awarding benefits from the birth of Mitchell's child until she returned to Drawbert to schedule surgery. We disagree. LIRC's decision gives ITW credit for that post-natal period of time when Mitchell's disability was associated with her child's birth. The record supports LIRC's conclusion that, other than that period, Mitchell was unemployed because of her knee injury and the layoff.

20

2. Mitchell Had Not Reached Her Healing Plateau

ITW, citing *GTC Auto Parts v. LIRC*, 184 Wis. 2d 450, 516 N.W.2d 393 (1994), and *Larsen Co. v. Industrial Comm'n*, 9 Wis. 2d 386, 101 N.W.2d 129 (1960), contends that LIRC does not have the authority to order an employer to pay disability benefits for the period after Mitchell's medical condition stabilized and before her surgery. LIRC rejected that argument.

> In the present case, of course, Dr. Drawbert recommended the surgery shortly in June 1995, after the date of injury and postponed it until her pregnancy resolved. He did not "plateau" the applicant or rate permanent disability until August 1996.
>
> . . . [W]hile the pregnancy was ongoing, the applicant was still submitting to treatment for her injury, still suffering from her injury, and still disabled from work because of it. . . .
>
> . . . Wisconsin adheres to an "as is" rule, under which an employer takes its employees as they are. . . . The "as is" rule is usually cited in connection with a situation where a work injury makes a preexisting condition permanently disabling, but nothing in *Semons* prevents application of the "as is" rule to healing period determinations for temporary disability.

We hold that LIRC's interpretation of the healing period to include that period of time when Mitchell's surgery was delayed in order to "treat" her preexisting condition, her pregnancy, is at least as reasonable as the interpretation ITW advanced. Our courts have held that the healing period is that period during which "the employee is submitting to treatment, is convalescing, still suffering from his injury, and unable to work because of the accident. The interval may continue until the employee is restored so far as the permanent

21

character of his injuries will permit." *Knobbe v. Industrial Comm.*, 208 Wis. 185, 190, 242 N.W. 501, 503 (1932). Although Mitchell did not see her doctor, she was still submitting to treatment for her injury, still suffering from it and still in need of surgery to correct it before she would reach her healing plateau. This interpretation is particularly reasonable when taking into account the Act's remedial purpose.

We agree with LIRC that both cases ITW relies on are distinguishable. *GTC* and *Larsen* dealt with claimants who had been treated, reached a healing plateau and then sought disability benefits for the period after their healing plateau because of changes in their medical condition. *See GTC*, 184 Wis. 2d at 452–54, 516 N.W.2d at 394–95; *Larson*, 9 Wis. 2d at 387–88, 101 N.W.2d at 129–30. The supreme court held that once they reached their healing plateau they were no longer in a healing period. *See GTC*, 184 Wis. 2d at 460–61, 516 N.W.2d at 398; *Larson*, 9 Wis. 2d at 392–93, 101 N.W.2d at 132. Here, Mitchell was awarded benefits only for the period prior to reaching her healing plateau. Another distinction from *GTC* is that there the claimant elected to forego surgery recommended by a doctor. *Id.* at 461, 516 N.W.2d at 398. Here, Mitchell followed medical advice by delaying surgery.

In summary, we conclude that LIRC's application of the law to the facts of this case is at least as reasonable as that ITW forwarded. Because LIRC's interpretation is as reasonable, we defer to its interpretation under a due weight deference standard of review.

*By the Court.*—Judgment affirmed.