SCHREIBER FOODS, INC. and Zurich American
Insurance Company, Petitioners-Respondents,

v.

LABOR AND INDUSTRY REVIEW COMMISSION,
Respondent-Appellant,

Gregory SKERVEN, Respondent.

Court of Appeals

*No. 2008AP1977. Submitted on briefs December 17, 2008.
—Decided February 10, 2009.*

2009 WI App 40

(Also reported in 765 N.W.2d 850.)

516

On behalf of the respondent-appellant, the cause was submitted on the briefs of *J.B. Van Hollen*, attorney general, and *R. Duane Harlow*, assistant attorney general.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Thomas K. Mullins* and *Daniel J. Kennedy*, Gass Weber Mullins LLC, Milwaukee.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J.  Schreiber Foods, Inc.,[1] seeks to reopen a worker's compensation decision by the Labor and Industry Review Commission. The Commission had awarded loss of earning capacity benefits to an injured employee. After the award, Schreiber rehired the employee and sought to vacate the award because the employee was now working. The Commission concluded the award was final and could not be vacated.

¶ 2.  Schreiber petitioned the circuit court for review. The circuit court reversed and the Commission now appeals. We conclude the award was final and could

---

[1] Schreiber and its insurer, Zurich American Insurance Company, are joint respondents. For the sake of simplicity, we refer to the respondents simply as Schreiber.

not be vacated under these circumstances. Therefore, we reverse the circuit court judgment.

## BACKGROUND

¶ 3.    Gregory Skerven was injured on the job while employed by Schreiber Foods, Inc. In an August 2004 decision, an administrative law judge (ALJ) found Skerven would be unable to return to his previous job but he might be able to complete vocational retraining for a different type of job. The ALJ found Skerven's injury resulted in ten percent permanent functional disability. With no retraining, his injury resulted in a sixty-five percent loss of earning capacity. The decision ordered a permanent partial disability award based upon these findings. However, the ALJ also "expressly reserved jurisdiction on the issue of retraining benefits."

¶ 4.    Schreiber appealed to the Commission, arguing, among other things, that the ALJ should not have awarded loss of earning capacity benefits on the assumption Skerven could not be retrained, while reserving jurisdiction to permit possible vocational rehabilitation. The Commission agreed that because vocational retraining is aimed at restoring earning capacity, it would be incongruent to award benefits for loss of earning capacity while also leaving open the possibility that that loss might be mitigated by retraining.

¶ 5.    In its February 2005 decision, the Commission examined the evidence and concluded "vocational retraining was not warranted based on the hearing record." It affirmed the ALJ's decision and order with two modifications. First, it deleted the paragraph in which the ALJ expressly reserved jurisdiction on the issue of retraining benefits. Second, it deleted the final paragraph in the ALJ's findings of fact and conclusions of law, which stated, in part:

519

> An interlocutory order is appropriate. As explained above, Mr. Skerven may enter a retraining program, which may entitle him to retraining benefits. Mr. Skerven's condition may deteriorate in the future, raising new issues regarding disability and treatment expense.

As relevant here, the Commission substituted the following:

> Based upon Dr. Vo's medical opinion, this order shall be left interlocutory with respect to additional disability and treatment expense that may arise in the future. However, based on the record in general and [one of the vocational expert's] opinion in particular, it must be concluded that vocational retraining is not warranted, precluding any future claim for vocational rehabilitation . . . .

The decision was not appealed, and Schreiber began paying the disability award.

¶ 6. Almost two years later, Schreiber rehired Skerven into a position within his physical restrictions. Schreiber then filed a petition requesting it be permitted to cease paying loss of earning capacity benefits. It argued that under WIS. STAT. § 102.44(6)(a)[2] it need not pay these benefits because it rehired Skerven at more than eighty-five percent of his pre-injury wage. This statute provides:

> Where an injured employee claiming compensation for disability under sub. (2) or (3) has returned to work for the employer for whom he or she worked at the time of the injury, the permanent disability award shall be based upon the physical limitations resulting from the injury without regard to loss of earning capacity unless

---

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

the actual wage loss in comparison with earnings at the time of injury equals or exceeds 15%.

¶ 7. The ALJ agreed with the main thrust of Schreiber's argument and issued an interlocutory order that Schreiber's obligation to pay loss of earning capacity benefits ended, at least temporarily, when Skerven returned to work. The ALJ reasoned that Wis. Stat. § 102.44(6)(a) is not limited to hires made before loss of earning capacity is awarded, and that the permanent partial disability award could be modified because it was interlocutory, not final.

¶ 8. Skerven appealed to the Commission and the Commission reversed. It noted that its February 2005 decision deleted the "interlocutory on all issues" language from the ALJ's initial decision, and that the loss of earning capacity determination was therefore final. It then concluded Wisconsin's worker's compensation statutes do not contain a provision for reopening a final award when an employer rehires an employee.

¶ 9. Schreiber sought judicial review of the Commission's decision. The circuit court found the statute was ambiguous and concluded the ALJ's interpretation of Wis. Stat. § 102.44(6)(a) was more reasonable than the Commission's. It therefore reversed the Commission. The Commission appeals.

## DISCUSSION

■

¶ 10. On appeal, we review the Commission's, rather than the circuit court's, decision. *ITW Deltar v. LIRC*, 226 Wis. 2d 11, 16, 593 N.W.2d 908 (Ct. App. 1999). Whether an award may be vacated presents a question of law. We have recognized that an adminis-

trative agency's conclusions of law are entitled to various levels of deference depending "on the comparative institutional capabilities and qualifications of the court and the administrative agency." *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996) (citation omitted). Here, the parties disagree about the deference we should accord the Commission. Schreiber argues the Commission's interpretation of Wis. Stat. § 102.44(6)(a) is due no deference because it presents a novel question the Commission has never before explicitly addressed. The Commission argues we should give it great deference because it involves interpretation of the Worker's Compensation Act, which the Commission has administered and interpreted for nearly a century. We need not resolve this issue, however, because we would reach the same result applying either level of deference.

¶ 11. At the outset, we note that Schreiber is incorrect when it asserts that Skerven's loss of earning capacity award was not final. The Commission's February 2005 decision modified the ALJ's order so that it was interlocutory only with respect to certain issues. The loss of earning capacity issue was not left interlocutory. Rather, the Commission addressed and resolved loss of earning capacity together with vocational retraining.

¶ 12. The section in the memorandum opinion addressing these issues is entitled, "Vocational issues: LOEC award versus vocational retraining." By modifying the ALJ's August 2004 order to finalize the vocational retraining determination, the Commission rendered the loss of earning capacity award final as well. The Commission deleted the sentence, "An interlocutory order is appropriate." In its place, the Commission inserted the following: "[T]his order shall be left

interlocutory *with respect to additional disability and treatment expense that may arise in the future.* However, . . . it must be concluded that vocational retraining is not warranted . . . ." (Emphasis added.) Therefore, the Commission modified the decision and order so that it was only interlocutory with respect to additional disability and treatment expenses.

¶ 13.   Schreiber asserts that the award nevertheless remained interlocutory because the Commission did not delete the final sentence of the award: "Jurisdiction is reserved on all issues for further findings, orders, and awards that are warranted and consistent with this decision." This argument ignores the words "consistent with this decision." The ALJ's decision and order must be read in light of the Commission's modifications, which specified that the decision was no longer interlocutory in all respects. As relevant here, the decision was final as to the award for loss of earning capacity benefits.

¶ 14.   The question then becomes whether the final loss of earning capacity award may be vacated. We conclude it may not.[3]

---

[3] The Commission acknowledges that orders may be left interlocutory with respect to loss of earning capacity when there is uncertainty about whether the applicant will be able to receive vocational retraining. However, according to the Commission, this occurs when a possible change in circumstances is raised at the hearing, or the medical evidence presented at the hearing indicates an additional disability may be sustained due to a deteriorating medical condition or the need for future surgery. This is far different from developments not foreseen and considered at the hearing, such as an employer's decision —after losing on the issue of loss of earning capacity—to rehire an employee.

¶ 15. Schreiber contends the statute does not distinguish between an initial claim seeking an award and a subsequent claim to reopen an award. Thus, it argues the opening clause of Wis. Stat. § 102.44(6)(a), "Where an injured employee claiming compensation for disability," can be read to include individuals who have already received disability awards.

¶ 16. When determining whether a statute is ambiguous, we examine "the language . . . to determine whether . . . the statutory language *reasonably* gives rise to different meanings." *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 47, 271 Wis. 2d 633, 681 N.W.2d 110 (citation and ellipsis omitted). We look first to the language of the statute, and if its meaning is plain, our inquiry ends. However, we also interpret a statute's language in context and discern its meaning "in relation to the language of surrounding or closely-related statutes . . . ." *Id.*, ¶ 46. "Where statutory language is unambiguous," we need not consult extrinsic sources. *Id.*

¶ 17. Schreiber's reading of the statute is not a reasonable interpretation. It requires reading "claiming compensation" to mean either claiming or *receiving* compensation. However, the word claiming does not have this dual meaning. Where the statute means "receiving compensation," it uses the word receiving. Wis. Stat. § 102.44(1) refers to "every employee who is *receiving* compensation under this chapter . . ."; whereas § 102.44(6)(a) addresses "an injured employee *claiming* compensation . . . ." (Emphasis added.) "[W]here the legislature uses similar but different terms in a statute, particularly within the same section, we may presume it intended the terms to have different

524

meanings." *Graziano v. Town of Long Lake*, 191 Wis. 2d 812, 822, 530 N.W.2d 55 (Ct. App. 1995).

¶ 18.   Once a permanent partial disability award is made, the worker's compensation statutes provide only limited provision for reopening. For example, WIS. STAT. § 102.18(3) permits an ALJ to set aside, modify, or reverse an award within twenty-one days from the date of the order. WIS. STAT. § 102.18(4)(c) allows an award to be set aside, modified, or reversed because of a mistake or newly discovered evidence for up to a year after the date of the order. The statutes do not, however, provide for the reopening of an award two years after it was rendered in the event the employer rehires the employee.[4]

¶ 19.   Finally,   Schreiber   argues   WIS.   STAT. § 102.18(1)(b) authorizes post-hearing award modifications due to a change in the employee's circumstances. This statute, however, permits interlocutory findings, orders, and awards "[p]*ending the final determination of* [*the*] *controversy* . . . ." WIS. STAT. § 102.18(1)(b) (emphasis added). When Schreiber sought to reopen, the award had been final for two years. It was not "pending

---

[4] Schreiber argues the Commission's interpretation of WIS. STAT. § 102.44(6) is inequitable and contrary to the purposes of the Worker's Compensation Act. Among other things, Schreiber argues the Commission's interpretation is contrary to the Act's goal of encouraging employers to rehire injured employees. Because the statutory language is unambiguous, we do not address this argument. Nevertheless, we discern no patent contradiction. If rehiring is a goal of the Act, it would arguably be more effective to link incentives to rehires made before loss of earning capacity obligations are imposed, rather than rewarding employers who wait until after an adverse award has been rendered to rehire the employee.

the final determination" of loss of earning capacity benefits. The statute has no application here.

*By the Court.*—Judgment reversed.