781 N.W.2d 236 (2010)
2010 WI App 36
Simone N. MERVOSH, Petitioner-Appellant,
v.
LABOR AND INDUSTRY REVIEW COMMISSION, Defendant-Respondent,
Zyzeon Capital Corporation, Inc., Defendant.
No. 2009AP271.
Court of Appeals of Wisconsin.
Submitted on Briefs December 1, 2009.
Opinion Filed January 26, 2010.
*238 On behalf of the petitioner-appellant, the cause was submitted on the brief of Jeffrey R. Myer of Legal Action of Wisconsin, Inc., Milwaukee.
On behalf of the defendant-respondent, the cause was submitted on the brief of David B. Nance of the Labor and Industry Review Commission, Milwaukee.
Before CURLEY, P.J., KESSLER and BRENNAN, JJ.
¶ 1 BRENNAN, J.
Simone N. Mervosh ("Mervosh") appeals from an order affirming a Labor and Industry Review Commission ("the Commission") decision that denied her claim for unemployment compensation. Mervosh argues that the Commission erred in reversing the hearing examiner's factual findings without adequate explanation and concluding that Mervosh did not have "good cause attributable to the employ[er]" for terminating her employment, pursuant to WIS. STAT. § 108.04(7)(b) (2007-08).[1] We affirm.

BACKGROUND[2]
¶ 2 This case arises out of Mervosh's claim for unemployment compensation benefits, filed after she quit her employment with Zyzeon Capital Corporation, Inc. ("Zyzeon"). The Department of Workforce Development ("Department") conducted an investigation into the circumstances surrounding Mervosh's decision to quit. In December 2006, the Department issued an initial determination, denying Mervosh's claim.
¶ 3 Mervosh filed an appeal, and a hearing was held before a hearing examiner for the Department in March 2007. In April 2007, the hearing examiner issued a decision, reversing the Department's initial determination and concluding that Mervosh was eligible for benefits. In so holding, the hearing examiner found that Mervosh quit for "good cause attributable to the employ[er]," within the meaning of WIS. STAT. § 108.04(7)(b) because Zyzeon failed: (1) to uphold its promise to provide Mervosh with health insurance after three months of employmentnoting that Zyzeon's health insurance policy was "a muddled mess"; (2) to provide Mervosh with a letter stating that Zyzeon did not provide her with health insurance, which would have allowed Mervosh to obtain state subsidized health care; and (3) to correct the *239 behavior of Alma Whitson ("Whitson"), Mervosh's direct supervisor, who was purportedly abusive to Mervosh.
¶ 4 Zyzeon then filed a timely appeal to the Commission. The Commission reversed the hearing examiner in September 2007. The Commission's decision stated:
When [Mervosh] was hired [Zyzeon] told her it would provide health insurance, but did not promise her that it would pay the entire premium. [Mervosh] began the process of applying for health insurance through [Zyzeon], but ultimately decided to obtain her insurance through the State of Wisconsin, which offered her free coverage. [Mervosh] requested that [Zyzeon] draft a letter indicating that she was not eligible for insurance coverage through [Zyzeon]. [Zyzeon] refused to do so, but stated that it would provide her with a letter saying that she had declined the coverage it offered.
[Mervosh's] supervisor, Alma Whitson, was a personal friend of [Mervosh's] with whom [Mervosh] socialized and carpooled to work. It was Ms. Whitson who assisted [Mervosh] in obtaining the job in the first place. During the course of her employment the personal relationship between [Mervosh] and Ms. Whitson turned sour and some of their disagreements carried over into the workplace.
On November 16, 2006, [Mervosh] gave [Zyzeon's] owner, Mr. Chovanec, a letter complaining about her working relationship with Ms. Whitson. [Mervosh] contended, among other things, that Ms. Whitson raised her voice in the office, slammed objects, and was argumentative. [Mervosh's] letter also addressed [Zyzeon's] failure to draft a letter indicating that it would not provide her with insurance coverage. In her letter [Mervosh] demanded that "any of the changes that obviously need to occur within the office ... be enacted by the end of the business day Friday, November 17, 2006."
Mr. Chovanec and [Mervosh] went to lunch to discuss the matter. Mr. Chovanec told [Mervosh] he would draft a letter for her indicating that she was not getting health insurance and asked [Mervosh] what she thought he should do about Ms. Whitson. [Mervosh] responded that that was his call.
The following day, November 17, 2006, Mr. Chovanec held a meeting with [Mervosh] and Ms. Whitson in an attempt to resolve issues. He told Ms. Whitson that [Mervosh] was unhappy with her behavior and summarized [Mervosh's] complaints. Ms. Whitson disagreed with [Mervosh's] allegations and about her conduct, to which Mr. Chovanec responded that they needed to find common ground so everyone could work together happily at the office. However, before any resolution could be reached, [Mervosh] stated that she was not going to argue anymore, grabbed her purse and left. She did not return to work thereafter. [Zyzeon] discovered that [Mervosh] had cleaned out her desk prior to the start of the meeting with Ms. Whitson.
¶ 5 The Commission then addressed the issue of whether Mervosh had shown "good cause attributable to the employ[er]" for terminating her employment, citing WIS. STAT. § 108.04(7)(b). The Commission noted that under Kessler v. Industrial Commission, 27 Wis.2d 398, 134 N.W.2d 412 (1965), good cause involves some fault on the employer's part and must be real and substantial. See id. at 401, 134 N.W.2d 412. The Commission's decision stated:
[Mervosh] contended that she quit because [Zyzeon] refused to provide her *240 with [the] health insurance it had promised and because she was harassed by her supervisor. The [C]ommission does not find either assertion persuasive.
The evidence did not establish that [Zyzeon] reneged on any promise to [Mervosh] regarding health insurance. Although [Zyzeon] said it would provide [her] with health insurance, it did not offer to pay all the premiums. [Mervosh] was no longer interested in obtaining insurance through [Zyzeon] once she learned it would not be free. [Mervosh's] quitting was not related to a failure by [Zyzeon] to provide her with insurance.
At the time her employment ended[,] [Mervosh] was not getting along with her supervisor, with whom she had a difficult personal relationship outside of the workplace. However, the [C]ommission is unpersuaded that Ms. Whitson engaged in the type of objectionable conduct alleged by [Mervosh]. Neither Mr. Chovanec nor Jessica Wickgers, another secretary who worked in the office during the two week period immediately preceding [Mervosh's] resignation, had ever seen or heard Ms. Whitson swear or slam things, as [Mervosh] alleged. Moreover, when [Mervosh] finally brought her concerns to Mr. Chovanec's attention he made immediate and reasonable efforts to resolve the situation. Mr. Chovanec went to lunch with [Mervosh] to discuss the problem and then held a meeting the following day with [Mervosh] and Ms. Whitson to try to iron out their differences. However, [Mervosh] walked out of the meeting prior to its conclusion. She had already cleared out her desk prior to the meeting and apparently had no intention of remaining employed.
While [Mervosh] may have had valid personal reasons to discontinue the employment relationship, the [C]ommission is unpersuaded that [Mervosh's] quitting was because of any culpable conduct on [Zyzeon's] part.
Based on its findings of fact and conclusions of law, the Commission reversed the hearing examiner's decision and denied Mervosh benefits.
¶ 6 Mervosh sought judicial review of the Commission's decision. The circuit court affirmed, and Mervosh now appeals.

STANDARD OF REVIEW
¶ 7 On appeal, we review the Commission's decision, rather than the circuit court's decision. ITW Deltar v. LIRC, 226 Wis.2d 11, 16, 593 N.W.2d 908 (Ct. App.1999). This is true even where the Commission has reversed the hearing examiner. See Transamerica Ins. Co. v. DILHR, 54 Wis.2d 272, 281-82 n. 12, 195 N.W.2d 656 (1972). Whether Mervosh is entitled to unemployment benefits under WIS. STAT. ch. 108 is a mixed question of law and fact. See Klatt v. LIRC, 2003 WI App 197, ¶ 10, 266 Wis.2d 1038, 669 N.W.2d 752. Here, Mervosh contests both the Commission's findings of fact and the application of those facts to the law; therefore, we set forth each standard of review below.

A. Findings of Fact
¶ 8 We uphold the Commission's findings of fact so long as they are supported by credible and substantial evidence. WIS. STAT. § 102.23(6). We do not substitute our judgment for the Commission's in considering the weight or credibility of the evidence on any finding of fact. Id. The Commission's "factual findings must be upheld if there is credible and substantial evidence in the record upon which reasonable persons could rely to make the same findings." ITW Deltar, 226 Wis.2d at 16, 593 N.W.2d 908.
*241 ¶ 9 Mervosh attempts to modify this statutory standard of review by arguing that we are to uphold the Commission's findings of fact only if they are supported by credible and substantial evidence and if the Commission explains those findings of fact which differ from those made by the hearing examiner. Mervosh bases this additional requirement on Transamerica, which held that when rejecting a hearing examiner's finding with respect to the credibility of a witness, fundamental fairness and due process require the Commission to explain in writing, not only that it consulted with the hearing examiner, but also its reasons for rejecting the hearing examiner's finding of fact. See id., 54 Wis.2d at 281-85, 195 N.W.2d 656. Mervosh argues that because of the "Transamerica rule" the reviewing court owes no deference to the Commission's conclusions of fact when the Commission fails to sufficiently explain its reversal of the hearing examiner's findings of fact.
¶ 10 We are not persuaded that the so-called "Transamerica rule" has become part of the standard of review. First of all, there is no such statement in Transamerica or any other case cited by the parties. Second, in the decisions since Transamerica, the court's statement of the standard of review has not changed. See ITW Deltar, 226 Wis.2d at 16, 593 N.W.2d 908. Mervosh is correct, however, to the extent that she asserts that Transamerica and its progeny require the Commission, under principles of fundamental fairness, to explain any decision that reverses the hearing examiner. See City of Appleton v. DILHR, 67 Wis.2d 162, 172, 226 N.W.2d 497 (1975) (requiring the Commission's predecessor to do two things in cases where it has reversed the hearing examiner: (1) show that it has consulted with the hearing examiner regarding the credibility of the witnesses; and (2) prepare a statement setting forth the reasons, facts, and conclusions it relied upon when rejecting the hearing examiner's findings). However, to the extent that Mervosh contends that she was denied due process under Transamerica and City of Appleton, we find that Mervosh failed to raise that issue before the circuit court and, therefore, forfeited it. See Wirth v. Ehly, 93 Wis.2d 433, 443-44, 287 N.W.2d 140 (1980), superseded on other grounds by statute, WIS. STAT. § 895.52, as recognized in Wilson v. Waukesha County, 157 Wis.2d 790, 460 N.W.2d 830 (Ct.App.1990) (an appellate court will not consider an issue raised for the first time on appeal). In addition, Mervosh declined the opportunity to file a reply brief on appeal and, therefore, did not rebut Zyzeon's argument that she forfeited any potential Transamerica issue by failing to raise it below. It has long been the position of this court that arguments not rebutted are deemed admitted. Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp., 90 Wis.2d 97, 109, 279 N.W.2d 493 (Ct.App.1979).
¶ 11 Consequently, we will uphold the Commission's factual findings if "there is credible and substantial evidence in the record upon which reasonable persons could rely to make the same findings." See ITW Deltar, 226 Wis.2d at 16, 593 N.W.2d 908.

B. Legal Conclusions
¶ 12 When reviewing the Commission's conclusions of law, "[w]e apply a sliding scale of deference that is contingent upon the level of [the Commission]'s experience, technical competence and specialized knowledge." Bretl v. LIRC, 204 Wis.2d 93, 104, 553 N.W.2d 550 (Ct.App.1996). The greatest level of deference requires that we give great weight to the Commission's legal conclusions if: (1) the Commission was charged by the legislature *242 with the duty of administering the statute; (2) the interpretation of the Commission is one of long-standing; (3) the Commission employed its specialized knowledge or expertise in forming the interpretation; and (4) the Commission's interpretation will provide consistency and uniformity in the application of the statute. See Tannler v. DHSS, 211 Wis.2d 179, 184, 564 N.W.2d 735 (1997). The next level of deference provides that if the Commission's "decision is very nearly one of first impression, we must give due weight to that decision." Bretl, 204 Wis.2d at 104-05, 553 N.W.2d 550. Finally, we owe no deference to the Commission and will conduct a de novo review if it is clear that the case is one of first impression and the Commission's special expertise and experience are no greater than ours. Id.
¶ 13 The parties dispute the level of deference we should give the Commission's conclusion of lawthat Mervosh did not have "good cause attributable to the employ[er]," within the meaning of WIS. STAT. § 108.04(7)(b), to voluntarily terminate her employment. Mervosh argues that due deference is appropriate, stating that "[w]hile [the Commission] has experience applying the legal standard of `good cause attributable to the employer,' it has not done so in the context of an employer's refusal to provide ... evidence ... that the employer did not subsidize medical insurance premiums." The Commission responds that this court previously established, in Klatt, that the court is to apply great weight deference to the Commission's application of the "good cause attributable to the employer" standard and that whether the Commission has previously applied that standard to the exact set of facts before it is not determinative.
¶ 14 We are persuaded that Klatt provides the appropriate standard of review in this instance. In Klatt, Klatt challenged the Commission's "determinations that she had voluntarily terminated her employment within the meaning of WIS. STAT. § 108.04(7)(a) and that she had not demonstrated `good cause' for terminating her employment within the meaning of § 108.04(7)(b)." Klatt, 266 Wis.2d 1038, ¶ 13, 669 N.W.2d 752. We held that great weight deference was appropriate on appeal because the Commission "is charged with the duty of administering § 108.04(7)(a) and (b) and has gained significant experience in interpreting and applying those statutes in the discharge of its duty." Klatt, 266 Wis.2d 1038, ¶ 13, 669 N.W.2d 752. We explicitly rejected Klatt's argument that a de novo or due weight deference review of the Commission's ruling was "appropriate based on the lack of published precedent interpreting WIS. STAT. ch. 108 in a situation where an employee has terminated his or her employment by failing to comply with a municipal or county residency requirement." Klatt, 266 Wis.2d 1038, ¶ 14, 669 N.W.2d 752. In so finding, we held as follows:
First, the lack of published precedent does not indicate that this is an issue of first impression or very nearly an issue of first impression for [the Commission]. Second, it is not necessary that [the Commission] has previously ruled on the application of ch. 108 to a factual situation exactly similar to the one presented if [the Commission] otherwise has extensive experience in administering the statutory scheme in a variety of situations.

Klatt, 266 Wis.2d 1038, ¶ 14, 669 N.W.2d 752 (emphasis added).
¶ 15 Consequently, we are unpersuaded that due deference to the Commission's decision is appropriate simply because the Commission may not have previously applied the good cause standard to a factual situation identical to the one before us or *243 even one dealing with medical insurance. Rather, what matters is the Commission's experience in interpreting and applying WIS. STAT. § 108.04(7)(a) and (b). And as we held in Klatt, the Commission certainly has that experience. Therefore, we will accord the Commission's legal conclusions great weight deference and "uphold [its] decision so long as it [is] reasonable, even if we feel that an alternative interpretation is more reasonable." See id., 266 Wis.2d 1038, ¶ 14, 669 N.W.2d 752.

DISCUSSION
¶ 16 We review two issues on appeal: (1) whether the Commission's findings are "supported by credible and substantial evidence," see WIS. STAT. § 102.23(6); and (2) whether the Commission's conclusion that Mervosh failed to show that she had good cause attributable to the employer for terminating her employmentwas reasonable, see Klatt, 266 Wis.2d 1038, ¶ 14, 669 N.W.2d 752. We will address each issue in turn.

A. The Commission's Findings of Fact
¶ 17 We first conclude that the Commission's findings of fact are supported by credible and substantial evidence in the record. The record shows that Zyzeon did not breach its promise to provide health insurance. Chovanec testified before the hearing examiner that Zyzeon "promised to make health insurance available." He did not testify that Zyzeon would pay for that insurance, in part or in its entirety. Further, there is evidence in the record demonstrating that Zyzeon followed through with that promise. Mervosh acknowledged that in April 2006, after she began her employment, Zyzeon gave her an "Individual Medical Quote Request Form," which she filled out and submitted. Zyzeon submitted this form to the insurance agency, and the agency responded by providing a quote on May 1, 2006. The quote indicated that it had an effective date of June 1, 2006, and that the rates were guaranteed only through that date. The quote also set forth the steps necessary to apply for coverage. Mervosh provided no evidence that she took those steps.
¶ 18 Further, Mervosh acknowledges that in April 2006 Zyzeon gave her and she filled out a "Personal Choice Application" form, in which she applied for health insurance coverage with BlueCross BlueShield. But Mervosh did not turn in the form until after the due date for coverage had passed. Consequently, we find the Commission's finding of fact that Zyzeon did not fail to provide health insurance is supported by credible and substantial evidence.
¶ 19 Mervosh also challenges the Commission's findings as to the real reason Mervosh voluntarily terminated her employment with Zyzeon. The Commission found Mervosh quit, not because of Zyzeon's failure to pay her health insurance premiums or failure to write a letter in support of her application for state subsidized health care, but rather because of her conflicts with Whitson. The Commission based its findings on the timing of Mervosh's decision to quitimmediately after walking out of a meeting during which Chovanec was attempting to resolve the conflict between Mervosh and Whitson, but months after Zyzeon had informed Mervosh that it would not be paying her health insurance premiums. Mervosh had previously informed Chovanec that all issues with Whitson needed to be resolved by November 17, 2006, the day she quit. The meeting discussion centered on Whitson's behavior, not health insurance. And Mervosh testified that she left the meeting with Chovanec and Whitson because she was not going to argue anymore. She had cleaned out her desk prior to the meeting. *244 Credible and substantial evidence in the record supports the Commission's finding.
¶ 20 Mervosh does not challenge the Commission's findings of fact surrounding her relationship and falling out with her supervisor, Whitson. Therefore, we will assume those facts are supported by credible and substantial evidence.

B. The Commission's Conclusions of Law
¶ 21 Next, we turn to whether the Commission properly applied its findings of fact to the law. Pursuant to Wisconsin's Unemployment Insurance Act, an employee who voluntarily terminates his or her employment is subject to a suspension of benefits unless one of the listed exceptions applies. WIS. STAT. § 108.04(7)(a). Mervosh asserts that her voluntary termination falls within the exception set forth in § 108.04(7)(b), lifting the suspension of benefits if the "employee terminated his or her work with good cause attributable to the employ[er]." Id.
¶ 22 "Good cause attributable to the employer" requires that an employee's "resignation must be occasioned by `some act or omission by the employer' constituting a cause which justifies the quitting." Kessler, 27 Wis.2d at 401, 134 N.W.2d 412. Further, "good cause attributable to the employer" "must involve some fault on [the employer's] part and must be real and substantial." Id. (emphasis added).
¶ 23 Having determined that the "real and substantial" reason Mervosh terminated her employment with Zyzeon was because of her conflict with Whitson, and not because of a health insurance issue, the Commission reasonably concluded that she did not terminate her employment for "good cause attributable to the employer." The Commission noted that when Mervosh brought her concerns about Whitson's behavior to Chovanec's attention he immediately took Mervosh to lunch to discuss a possible resolution with her. He then met the next day with both Mervosh and Whitson to try to resolve their conflicts. It was Mervosh who walked out of the meeting before it had ended, independently concluding that nothing would change. The Commission also found that Mervosh cleaned out her desk prior to the meeting, indicating that she had no intention of resolving her issues with Whitson.
¶ 24 Because we find the Commission's findings of fact sufficiently supported by credible and substantial evidence, and because we further find the application of those facts to the law reasonable, we will not overturn the Commission's decision on appeal.
Order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2007-08 version unless otherwise noted.
[2] In setting forth their respective statements of fact, the parties cited extensively to the administrative record. Unfortunately for the court, the administrative record, as received by us, was in disarray. The court was forced to spend substantial time putting those pages that were numbered in order and attempting to decipher those pages that were not numbered. It is the appellant's duty to see that the record is sufficient for the court to review the issues raised on appeal. See State Bank of Hartland v. Arndt, 129 Wis.2d 411, 423, 385 N.W.2d 219 (Ct.App.1986). "Sufficient" includes ensuring that the record is compiled in a manner that is logical and accessible to the court. The appellant is advised to do so in the future.